These appeals arise from a divorce judgment. Teresa Anne Robinson and Robert Dale Robinson were married on February 28, 1987. One child, a son, was born of the marriage. The wife filed a divorce complaint on July 29, 1999. The husband answered the complaint and filed a counterclaim for a divorce, on September 20, 1999, *Page 731 
requesting custody of the minor son, child support, and a property division.
After conducting an ore tenus proceeding, the trial court entered an order on June 15, 2000, divorcing the parties, dividing the marital property, and awarding the parties joint custody of the minor child, with primary physical custody in the wife. The order also awarded the wife periodic alimony in the form of a requirement that the husband pay for her health insurance for 36 months. The trial court further awarded the wife $51,820 as a property settlement. The trial court reserved the issue of child support, saying that he was doing so because both parties had filed for extensions for filing their 1999 tax returns.
After conducting a hearing on September 26, 2000, the trial court ordered the husband to pay $582 per month in child support. The husband filed a motion to stay enforcement of the property division pending an appeal; the trial court granted that motion on September 26, 2000. The husband on July 19, 2000, appealed from the order of June 15, 2000, but that order was not then final, because the amount of child support had not been determined. He filed a motion to suspend the rules, which this court granted. On September 26, 2000, the trial court conducted a hearing to establish an amount for child support. Thereafter, the husband appealed the order requiring him to pay child support and setting an amount. He also filed a motion to consolidate the two appeals. This court granted that motion and consolidated the appeals.
The husband argues that the trial court erred by admitting into evidence an affidavit of a nonparty, an affidavit that had been presented in another domestic-relations proceeding. He also challenges the child-support award and the property division.
The parties were married for 13 years. They separated when the wife moved out of the marital residence in July 1999. Each party accused the other of conduct that caused the breakdown of the marriage. The wife accused the husband of adultery and domestic violence. The husband testified that the wife had a volatile temper and that her temper had caused altercations between the parties. The wife alleged that the husband committed adultery with a high-school girlfriend. The husband testified that his relationship remained platonic during the course of the parties' marriage.
The parties acquired the marital residence, which was located on 8.2 acres, in 1989. For the first two years of their marriage, they lived in a mobile home on land owned by the husband's parents. The wife testified that the parties had used $10,000 from her Gayfer's Department Store retirement account to make a down payment on the house and surrounding property. Both parties testified that the marital residence was worth approximately $81,000. The marital residence and real property were encumbered by two mortgages; the first mortgage secured a debt with a balance of approximately $50,000, and the second mortgage secured a debt with a balance of approximately $30,000.
During a portion of the parties' marriage, the wife worked for Gayfer's Department Store, for Bryson's Veterinarian Clinic, and for the Montgomery Cancer Center, before establishing her nursery business, known as Cedar Point Home and Garden, in 1995. She established her nursery business on the land adjacent to the marital residence. The husband testified that the value of the nursery and the 2.5 acres of land on which it is situated is approximately $15,000. The record indicates that the wife's nursery business had gross receipts of approximately $100,000 in 1999. *Page 732 
While the parties were married, the husband worked for Southern Natural Gas Company (SONAT). He worked for SONAT from 1982 until 1997. In 1997, he opened a business known as Robinson Recycling, on property adjacent to the marital residence.[1] At first, he worked on a part-time basis at Robinson Recycling. However, at the time of trial, he had ceased working for SONAT and was working full-time at Robinson Recycling. He testified that the value of his shop and the 3 acres of land on which it is located is approximately $25,000. He testified that he spent $12,900 in constructing his shop and approximately $3,000 on related electrical work and insulation. The record indicates that the husband used most of the funds of a loan that is secured by the second mortgage on the marital residence to establish his business. The record also indicates that the husband had gross receipts of $242,000 in 1999 from his recycling business.
The parties also owned two parcels of land in Coosa County. George Brown, a business associate of the wife, who works with her on various landscaping jobs, operates a nursery on one of those parcels and pays rent to the parties. The husband testified that the value of that parcel was approximately $20,000. That parcel is subject to a mortgage securing payment of a $10,000 balance on a loan. The parties use the rental payments from Mr. Brown to make the monthly mortgage payment of $180. The husband testified that the value of the second parcel was approximately $10,000. There is no indebtedness on the second parcel. The wife testified that the two parcels together were worth approximately $17,000.
At the time of trial, the husband had a retirement plan with SONAT that had been rolled over into an AmSouth investment account. That account was then valued at approximately $98,500. The husband testified that during the marriage he had withdrawn approximately $45,700 from the AmSouth investment account to pay off the parties' joint debts. The husband testified that he had had the SONAT retirement account for approximately four years before the parties' married. The wife has no retirement accounts. The retirement account she had had with Gayfer's Department Store had been used to provide the down payment on the marital residence.
The trial court awarded the parties joint custody of the minor child, with primary physical custody in the wife. The wife was awarded the marital residence and the adjoining property and was ordered to pay the debt secured by the first mortgage on the property. The husband was awarded his business and his equipment. He was ordered to move his shop and equipment within nine months of the date of the order. The trial court also ordered the husband to make the payments on the debt secured by the second mortgage on the property. The wife was awarded both of the Coosa County parcels. The husband was ordered to pay alimony, in the form of paying for the wife's medical insurance, for 36 months and was further ordered to pay the wife $51,820 as a property settlement.
A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228
(Ala.Civ.App. 1998). This presumption of correctness is *Page 733 
based upon the trial court's unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility.Brown, supra; Hall v. Mazzone, 486 So.2d 408
(Ala. 1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Brown, supra. However, there is no presumption of correctness in the trial court's application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala. 1987).
The husband first argues that the trial court erred when it admitted into evidence the affidavit of a nonparty that had been presented as evidence in an unrelated domestic-relations case. At the trial, the wife's attorney read into the testimony part of a nonparty's affidavit and, in examining a witness, used that affidavit. As a general rule, an affidavit is "inadmissible hearsay and cannot be offered as substantive evidence." Associates Fin. Servs. Co. of Alabama, Inc. v. Barbour,592 So.2d 191, 196-97 (Ala. 1991); Charles W. Gamble, McElroy's AlabamaEvidence § 260.01 (5th ed. 1996).
The affidavit contained statements that could have caused a fact-finder to draw an inference that would have cast doubt on the husband's fitness as a parent. The husband does not challenge the custody determination. Although we agree that generally an affidavit is inadmissible as hearsay, after carefully reviewing the record in this case we conclude that any error the trial court committed in admitting the affidavit to be harmless because the substance of the affidavit pertained only to the husband's fitness as a parent, but he does not challenge the trial court's custody determination. See Rule 45, Ala.R.App.P.
The husband also argues that the trial court erred in its application of the Child Support Guidelines contained in Rule 32, Ala. R. Jud. Admin., and in failing to specify in its order the reasons it deviated from those guidelines.
In its order, the trial court stated: "Father to pay child support to the mother in the sum of $582 per month commencing 9/29/00." The record does not contain the wife's Form CS-41 ("Child Support Obligation Income Statement/Affidavit"). The wife filed a "Motion to Establish Child Support and Other Relief." In that motion, she contended that her gross monthly income was $553 and that $803 per month was the amount the husband should be ordered to pay. The husband's Form CS-41 indicates that he has self-employment gross monthly income of $5,065 and that he pays $380 monthly for the child's insurance coverage. The record contains a Form CS-42 ("Child Support Guidelines") filed by the husband; it indicates that he earns $5,065 per month and that the wife earns $2,348 per month. This court is unable to determine, from the record and from its own calculations, how the trial court determined the husband's child-support obligation.
A court determines a noncustodial parent's child-support obligation by applying Rule 32, which establishes "Child Support Guidelines"; the application of the those guidelines is mandatory. Nelson v. Landis,709 So.2d 1299 (Ala.Civ.App. 1998). The trial court has no discretion in the matter. Mitchell v. Mitchell, 723 So.2d 1267 (Ala.Civ.App. 1998). Furthermore, our supreme court has recognized that those guidelines require the trial court to consider all the resources of both parents and not simply their incomes. Mitchell, supra (citing Ex parte St. ClairCounty Dep't of Human Res., 612 So.2d 482 (Ala. 1993)). Rule 32(E), Ala. R. Jud. Admin., provides that "[a] standardized Child Support Guidelines form and a Child Support Obligation Income Statement/Affidavit . . . shall be filed in each action to establish or *Page 734 
modify child support obligations and shall be of record and shall be deemed to be incorporated by reference in the court's child support order." The trial court may, within its discretion, deviate from the Child Support Guidelines; however, if it does so, it must enter a written finding, supported by the evidence, that the application of the guidelines would be unjust or inequitable. Rule 32(A)(i) and (ii);Allegro v. State ex rel. Lett, 747 So.2d 913, 914 (Ala.Civ.App. 1999); Nelson v. Landis, supra. "A trial court's failure to follow the guidelines or to make written a finding that application of the guidelines would be unjust, is reversible error." State ex rel.Waites v. Isbell, 718 So.2d 85, 86 (Ala.Civ.App. 1998).
The trial court did not follow the Rule 32 Child Support Guidelines in calculating the husband's child-support obligation, and it did not make a written finding that the application of those guidelines would be inequitable or unjust. We therefore reverse the judgment insofar as it relates to the husband's child-support obligation. On remand, the trial court is to redetermine that obligation. If the trial court determines that the application of the guidelines would be inequitable, then it must enter a written finding indicating that fact.
Last, the husband argues that the trial court abused its discretion in dividing the marital property. It is well established that in a divorce case matters such as alimony and property division are within the discretion of the trial court and that its rulings on those matters will not be reversed absent a showing of plain and palpable error. Montgomeryv. Montgomery, 519 So.2d 525 (Ala.Civ.App. 1987); Parrish v. Parrish,617 So.2d 1036 (Ala.Civ.App. 1993). On appeal, because a division of marital property and an award of periodic alimony are interrelated, these issues must be considered together. Barnes v. Barnes, 521 So.2d 58
(Ala.Civ.App. 1988); Montgomery, supra. The trial court's rulings on those issues will not be reversed absent a finding that the rulings are not supported by the evidence and thus amount to an abuse of discretion.Parrish, supra. A division of property is not required to be equal, but it must be equitable, according to the particular facts and circumstances of the case. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App. 1996);Parrish, supra. In dividing the marital property, the trial court should consider "the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining the standard after the divorce, the value and type of property they own, and the source of their common property." Covington v. Covington,675 So.2d 436, 438 (Ala.Civ.App. 1996). Moreover, "funds paid into a retirement plan [by the husband] are an asset of the [husband] which may be considered by the court in effecting an equitable property division or in making an award of alimony in gross." Powell v. Powell, 628 So.2d 832,834 (Ala.Civ.App. 1993) (citing Nelson v. Nelson, 628 So.2d 798
(Ala.Civ.App. 1993)).
The parties were married for 13 years. At the time of trial, the wife was 42 years old and was working full-time. The husband was 39 and he also was working full-time. Both parties are self-employed.
The wife was awarded the marital residence, the property surrounding the residence, her nursery business, and the Coosa County property. She also was awarded periodic alimony for 36 months and $51,820 as a property settlement. The husband was awarded his business and all of the business equipment. The trial court directed the husband to relocate Robinson Recycling at his own expense. *Page 735 
There is little variance in the valuations the parties gave the marital assets. The husband and the wife testified to values of approximately $250,000 and $240,000 respectively. An analysis of the trial court's division of property appears as follows:
AWARD Husband Wife
House $81,000 Nusery $15,000 Recycling Co. $25,000 ($30,000)[2]
Coose County (1) $20,000 ($17,000)[3]
Coosa County (2) $10,000 SONAT/AmSouth $46,680[4] $51,820 _______ _______ $71,680 ($76,680) $177,280 ($174,820) Less 1st Mortgage: ($50,000) Less 2nd Mortgage: ($30,000) $41,680 ($46,680) $127,820 ($124,820) _______ _______
We conclude that the trial court's property division is inequitable. As the husband emphasizes, he was awarded no assets from which he can pay the property settlement ordered to the wife, except the AmSouth investment account. If the husband uses that account to pay that award and does so within the time allowed by the trial court, he would incur substantial tax liability, which could virtually negate the award of the AmSouth investment account to him. Our examination of the schedule of assets awarded indicates that if the husband incurs that tax liability, then he could be left with no asset other than the Robinson Recycling business, which he must remove at his own expense from the marital real estate. That result would be unequitable and unjust. Further, we note that the award contravenes § 30-2-51(b)(3) and (c), Ala. Code 1975. We reverse that portion of the judgment dividing the property. On remand, the court is to fashion a more equitable property division that complies with § 30-2-51.
Those portions of the divorce judgment setting the amount of child support and dividing the marital property are reversed. The case is remanded for further proceedings consistent with this opinion.
Each party's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Crawley and Pittman, JJ., concur.
Yates, P.J., concurs specially.
Murdock, J., concurs in the result.
[1] Facing the marital residence from Highway 170, one sees the marital residence in the far front left corner of the 8.2 acres of property. The Robinson Recycling business is located behind the marital residence, slightly to the right. Cedar Point Home and Garden is located to the right of Robinson Recycling.
[2] The wife testified that Robinson Recycling was worth approximately $30,000. The husband testified that Robinson Recycling was worth approximately $25,000. These figures reflect the net worth of Robinson Recycling.
[3] The wife testified that the Coosa County parcels were worth approximately $17,000 together.
[4] This amount reflects the balance remaining in the husband's retirement account after he pays the $51,820 property settlement to the wife. The amount does not reflect the tax incidence that the husband will incur.