PER CURIAM.
Bonnie Lee Klauss Morris (“the wife”) and Paul Ernest Morris (“the husband”) were married for 24 years. On August 18, 2000, the wife filed a petition seeking a divorce from the husband alleging incompatibility of temperament between the parties and an irretrievable breakdown of the *1259 marriage. Three children were born of the parties’ marriage; only one child was a minor at the time the wife filed for a divorce (“the minor child”). The wife sought custody of the minor child, and requested current, continuing, and post minority child support from the husband. The wife also requested, among other things, periodic alimony and an equitable division of the marital property. On September 25, 2000, the husband answered and filed a counter-petition for divorce in which he requested custody of the minor child and an equitable division of the parties’ marital property. On October 20, 2000, the wife answered the husband’s counter-petition.
Following a four-day ore tenus hearing in October 2001, the trial court entered a judgment on November 20, 2001, that stated, in pertinent part:
“The oral testimony in this case consisted of the testimony of both parties. On numerous occasions, the testimony of the Husband conflicted with and contradicted the testimony of the Wife. The Court, sitting ore terms, was called upon on numerous occasions to pass upon the credibility and truthfulness of the witnesses. The Court has done so and has considered the credibility of the ... parties in its decision.
[[Image here]]
“The Husband testified that it costs $360 a month to have the minor child on his medical insurance coverage. The Court will use that figure when determining child support according to the child support guidelines.
[[Image here]]
“1. The Husband shall execute a quitclaim deed transferring his interest in the marital residence to the Wife.... [He] shall make arrangements to satisfy the mortgage in the ... amount of $18,000.00 on the marital residence within thirty (30) days of the date of this Order. The Wife will receive the marital residence clear of all liens and indebtedness.
“2. The Wife will receive the 1998 Astro Van which she is currently driving and she shall assume the indebtedness thereon and hold the Husband harmless.
“3. Each party shall be responsible for any credit cards in their names and shall hold the other harmless of the same.
“4. The Husband shall assume the debt of Gulf Bay [the husband’s business] in the amount of $68,900.43 and shall hold the wife harmless.
[[Image here]]
“7. The Wife will receive no interest in the Husband’s inheritance since there has been no testimony that said inheritance has been used regularly during the marriage, and in fact, the evidence presented is just the opposite.
“8. The Wife is hereby awarded primary physical custody of the minor child ... and the parties shall share joint legal custody. The Husband will be awarded the following visitation....
“9. The Husband shall pay child support to the Wife ... $425 per month.... Said child support payments shall continue until such time as [the minor child] achieves legal age, becomes emancipated or self-supporting, or dies. Said child support payment shall include funds necessary to pay for [the minor child’s] private school tuition and all fees associated therewith.
“10. The Husband currently owns a whole-life insurance policy ... in the amount of $100,000 on the Wife’s life wherein the Husband is the beneficiary of same.... The Court hereby awards the Wife said $100,000 whole-life ... policy....
*1260 “11. The Wife is hereby awarded $15,000 as an attorney fee....
“12. The Wife is hereby awarded alimony in the amount of $750 a month for a period of eight (8) years ... and continuing ... until December 1, 2009, or until such time as the Wife remarries ... cohabitates ... [dies], the Husband’s death, or otherwise terminated by law; whichever shall first occur....
“13. The Husband shall be obligated to provide medical insurance for the benefit of the minor child, to keep the same in full force and effect, pay the premiums thereon, and refrain from allowing said policy to lapse.... The Husband shall pay 75% of all non-covered medical expenses not covered by insurance with the Wife paying the remaining 25%....
“14. The retirement account, investment account and bank accounts currently in the Husband’s name shall remain his and shall remain his accounts. The retirement account, investment account and bank accounts currently in the Wife’s name shall remain hers and shall remain her accounts. Both the Husband and Wife shall have as their separate property, all checking accounts, savings accounts, cash, stocks, bonds and equivalents presently in their possession or in their individual name.”
Both parties filed postjudgment motions pursuant to Rule 59, Ala. R. Civ. P. Following a hearing on the motions, the court entered an order amending the final judgment; that order read, in pertinent part, as follows:
“1. That [the husband] shall pay alimony in the amount of $750 for the month of November, 2001 within 30 days of this Court’s Order.
[[Image here]]
“3. All other matters raised in the [wife’s] Motion for New Trial and Motion to Alter,- Amend or Vacate Judgement are hereby DENIED.”
The wife appealed.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This “presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.” Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).
The wife argues on appeal that the trial court abused its discretion in its division of property and award of alimony. The wife asserts that the trial court erred because the amount of alimony it awarded was insufficient, and it further erred by limiting the duration of the alimony award to only eight years. The wife further argues that the trial court abused its discretion in failing to order the husband to maintain life-insurance coverage to secure the award of alimony and child support in the event of the husband’s death.
It is well established that a trial court’s determination regarding a property division and an award of alimony is entitled to a presumption of correctness and that its rulings on those matters will not be reversed absent a showing of plain and palpable error. Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987); Parrish v. Parrish, 617 So.2d 1036 (Ala. *1261 Civ.App.1993); Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.1996). A property division must be equitable, but not necessarily equal; the trial court determines what is equitable. Duckett v. Duckett, 669 So.2d 195 (Ala.Civ.App.1995); Parrish, supra. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, supra; Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986).
At the time of the hearing in this matter, the wife was 45 years old and the husband was 46 years old. The parties married in December 1976 and were married for 24 years. Before the hearing in this matter, the parties had been separated for one year. The parties’ minor child, a son, was 14 years old at the time of the hearing in this matter. The wife has worked as a registered nurse for 20 years, but she testified that she had not worked since 1996 because of health problems related to dysautonomia.[1] The wife receives Social Security disability benefits in the amount of $789 per month. As a result of her medical condition, the wife testified, she is limited in her physical abilities and requires a great deal of rest; however, the wife admitted to driving long distances to attend the minor child’s sporting events.[2] The wife also testified that she is capable of “doing a lot of things,” including light housework and “light” cooking. The wife conceded that a psychologist once told her that she could go back to work.
According to her testimony, the wife spends approximately $127 per month for various prescription medications and is covered by the husband’s health-insurance plan, which is provided through his business, and by “Medicare Part A.”[3] The wife stated that she has applied for “Medicare Part B” and “C-Plus,” which would cost her approximately $163 per month, but that she has yet to receive coverage under those programs. The wife further stated that her participation in the programs would not cover all of her prescription medication costs.
The wife testified that in January 1999 the husband began working in Foley at his mother’s real estate company and that he gradually moved out of the marital home. The wife and the minor child continued to reside in the marital home. According to the wife, the parties’ relationship was suffering by March 2000 and the husband failed to show her any physical affection. In May 2000 the husband informed her that he wanted a divorce.
The wife testified that the minor child receives $394 each month in Social Security income as a result of wife’s disability. The minor child attends a private school, Catholic High School, and a tuition payment of $300 per month is due each month of the year. The wife testified thát the husband is not paying for the minor child’s *1262 private-school tuition but that the tuition payments are coming from the minor child’s Social Security income. In addition to tuition, the wife testified, the minor child’s school expenses include $90 per month for fees and uniforms, and $10 per month for school supplies. The wife submitted a list of the minor child’s monthly expenses that totaled approximately $1,655 per month; tuition, fees, and supplies were included in the list.
Beyond the costs associated with school, the wife also included expenses associated with the minor child’s participation in tennis. The wife testified that the minor child was an avid-tennis player and that the minor child had been ranked at state and national levels, but that his commitment level and rankings in the sport had dwindled. According to the wife, the minor child now showed an interest in and enjoyed playing high school football. The wife listed expenses totaling $870 for the child’s tennis lessons, tournament fees, and travel.
The wife owes $20,254 in credit-card and bank debt, and her payments toward that indebtedness are $558 per month. The wife testified that she owes her parents $10,050 for money she borrowed to pay her attorney fees. The wife submitted an exhibit listing her total monthly living expenses as $3,238.
The wife testified that the husband’s mother had helped the parties financially through the years and that the mother had given generous gifts to the parties and their children. The wife further testified that in 1996, the husband’s mother gave the husband a 50 percent interest in the family real estate business and that this business has generated income for the parties.
The husband testified that he has a bachelor’s degree in business administration and that his income was almost $40,000 in 2001 from his job as a real estate broker/agent and from distributions from a revocable trust established following his mother’s death in June 2000. The husband’s income tax records indicate that he earned approximately $33,000 in 1998; $40,000 in 1999; and $43,800 in 2000.
The husband testified that he recently closed his real estate agency because of a foundering real estate market, and that he combined the real estate agency with another company.[4] According to the husband, he now works on straight commission, but he still receives some income from the revocable trust. The husband testified that he would inherit approximately $343,000 in real estate and in life-insurance proceeds from his mother.
The husband testified that the marital home had accumulated approximately $150,000 worth of equity, and that he owed approximately $18,000 on a balloon note that was due at the time of the hearing. The husband further testified that he pays $280 per month toward mortgage indebtedness on the marital home.[5] The husband testified that the title to the 1998 Astro van the wife drives is in his name and that he still owes $8,000 on the van. The husband also testified that he pays $360 per month for the minor child’s health-insurance coverage.
Pursuant to the trial court’s divorce judgment, the wife was awarded $750 per month in periodic alimony for a period of eight years. After considering the testi *1263 mony and evidence presented at the ore tenus hearing, the trial court stated in its order that it believed the wife was capable of part-time employment:
“The wife holds a RN-ADN degree from Mobile College and up until a few years ago was a practicing Registered Nurse. She developed Dysautonomia and subsequently fell from a stool at Baptist Hospital where she injured her arm.... According to the wife she cannot work and has not been able to work for several years. According to the husband, although he agrees that she cannot work full time, he is of the opinion based upon his observing his wife over the last few years that she could obtain part-time employment.
“There was extensive testimony presented concerning the wife’s traveling by vehicle throughout the southeast United States ... with the minor son to attend tennis tournaments. Just recently, the testimony showed that she and the minor son traveled by vehicle from Wet-umpka, Alabama, to Tampa, Florida, spent a day at Disney World and drove back to Wetumpka, Alabama, within a period of three (3) days. Also, the testimony showed that in June 2000, the wife traveled from Wetumpka, Alabama, to Robertsdale, Alabama, late one Friday night and arriving fsic] in Robertsdale, Alabama, at approximately 2:00 a.m. After a brief visit at the husband’s mother’s residence, she and the minor son then got back into the van and drove all the way back to Wetumpka, Alabama, arriving in the early morning hours of the next day. The Court is of the opinion that the wife does have physical problems that will not allow her to work full time. However, the Court is also of the opinion that the wife could obtain part-time employment and therefore have an income of her own.”
After thoroughly reviewing the record on appeal, as well as the trial court’s detailed order, we cannot say that the trial court abused its discretion in its division of property and award of alimony. It is well settled that the trial court is in the unique position of being able to observe the witnesses firsthand and to evaluate their demeanor and credibility. Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001); Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). Because the trial court is in that unique position, its judgment based on ore tenus evidence is presumed correct. Robinson, supra. Given the observations made by the trial court in its detailed order, we cannot say that the trial court’s judgment was so unsupported by the evidence as to be plainly and palpable wrong. Brown, supra.
The wife next argues that the trial court abused its discretion in failing to comply with Rule 32, Ala. R. Jud. Admin. Specifically, the wife asserts that the record does not contain a CS^12 child-support guidelines form.
“[Tjhis court has consistently held that the application of Rule 32 is mandatory in child-support actions filed on or after October 9, 1989. A trial court may deviate from the child-support guidelines in determining the child-support amount; however, any deviation is improper if it is not justified in writing. In Martin v. Martin, 637 So.2d 901, 902 (Ala.Civ.App.1994), this court issued the following directive:
“ We hold, therefore, that the word “shall” in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.’
“Compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guide *1264 lines would be unjust or inequitable. When the court determines that application of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32.”
Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App.2000)(some citations omitted)(emphasis added).
The record on appeal contains CS-41 child-support income affidavits from both the wife and the husband; however, it does not contain a CS-42 child-support guidelines form.[6] Rule 32(E), Ala. R. Jud. Admin., mandates the filing of “[a] standardized Child Support Guidelines form and a Child Support Obligation Income Statement/Affidavit form ... in each action to establish or modify child support obligations and [those forms] shall be of record and shall be deemed to be incorporated by reference in the court’s child support order.” Rule 32(E), Ala. R. Jud. Admin.; see also Nelson v. Landis, 709 So.2d 1299, 1300 (Ala.Civ.App.1998).
The portion of the trial court’s divorce judgment awarding child support, states, in part:
“The husband shall pay child support to the wife, for the benefit of the child, $425 per month.... Said child support payments shall include funds necessary to pay for [the child’s] private school tuition and all fees associated therewith.”
The husband contributes $360 toward the minor child’s health care. The wife submitted a list of the minor child’s monthly child-support expenses that included $300 per month for private school tuition, $90 per month for school fees and uniforms, $10 per month for school supplies, and $115 per month for school lunches and snacks. The record indicates that the trial court considered only the tuition and fees as the actual costs associated with attending a private school above and beyond the costs associated with attending a public school; the trial court clearly contemplated the costs of private-school tuition and fees in its award of child support. However, the trial court’s basis for determining the father’s $425 child-support obligation is unclear.
The record in this case does not contain all the child-support guideline forms required pursuant to Rule 32(e), Ala. R. Jud. Admin. Moreover, as was the case in Nelson v. Landis, 709 So.2d 1299, 1300-01 (Ala.Civ.App.1998), “[t]his court has unsuccessfully attempted, based on the evidence in the record, to determine the manner in which the trial court determined the [husband’s] child support obligation.” Therefore, this court must reverse the judgment of the trial court regarding the issue of child support and remand this case for the parties to fully comply with Rule 32(E), Ala. R. Jud. Admin., and for the trial court to enter an order in compliance with the child-support guidelines, or in the alternative, to enter findings justifying a deviation from those guidelines. See Nelson v. Lan-dis, supra.
The appellant’s request for an attorney fee is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
*1265 CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., concurs in part and dissents in part.
MURDOCK, J., concurs in part; concurs in the result in part; and dissents in part.

. Dysautonomia is the faulty regulation of the automatic nervous system and is commonly associated with mitral valve prolapse syndrome. Dysautonomia is a genetic condition.

. The wife has traveled to Dothan, Alabama; Atlanta, Georgia; Macon, Georgia; Jekyll Island, Georgia; and Baton Rouge, Louisiana.

. The wife testified that the husband closed his business but his health insurance with Blue Cross and Blue Shield was still intact.

. The husband testified that the business was in debt in the amount of approximately $69,000.

. This payment is for a second mortgage on the house; the amount of total mortgage indebtedness is unclear from the record on appeal.

. The record indicates that the husband introduced a CS-42 into evidence at trial; however, the form is not included in the record on appeal.