THOMPSON, Judge.
Mary S. Brandt (“the wife”) and Richard L. Brandt (“the husband”) were married on May 20, 1989. No children were born *512 of the parties’ marriage. On March 24, 2003, the wife filed a complaint seeking a divorce. The husband answered on April 29, 2003, and counterclaimed for divorce. On July 23, 2003, the trial court held a hearing and received ore tenus evidence. On August 6, 2003, the trial court entered a judgment divorcing the parties, ordering the husband to pay alimony in gross and periodic alimony, and fashioning a property division. No postjudgment motions were filed. The wife timely appealed.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This “presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.” Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).
At the time of the hearing in this matter, the wife was 63 years old and the husband was 51 years old. The parties had been married for 14 years. At the time the parties married, the wife was employed as a personnel specialist with Cluett Peabody, where she had been employed for 12 years. The wife testified that when Cluett Peabody closed its business she went to work for Kenco Logistics and worked at Kenco for approximately nine years. At some point during her employment with Kenco, the wife became disabled. The wife informed the trial court that she suffers from chronic obstructive pulmonary disease, emphysema, acute bronchitis, and asthma. The wife testified that she receives Social Security disability benefits in the amount of $980 per month. In addition to her Social Security disability benefits, the wife also receives $110.57 each month from her Cluett Peabody pension.
The wife testified that when the parties married she had a 401(k) plan with Cluett Peabody that was valued at approximately $12,000. The wife testified that she transferred the money from her 401(k) plan into an individual retirement account (“IRA”). The wife stated that she also had a 401(k) plan with Kenco, which was worth $30,293.05, that she rolled over into her IRA in 1998. Documentary evidence admitted at trial indicates that the wife’s IRA had a balance of $12,546.88 as of May 30, 2003.
The wife testified that during the parties’ marriage she deposited all of her employment earnings into the parties’ joint bank account. According to the wife, the husband gave her $50 per week as an allowance. The wife testified that during the parties’ marriage she withdrew money from her IRA and deposited the funds into the parties’ joint bank account to pay for household needs and to pay off the parties’ debts. According to the wife, $15,000 of the money withdrawn from her IRA was used to purchase a 1998 Chevrolet Silvera-do extended-cab truck for the husband. The wife offered into evidence copies of a check register from the parties’ joint bank account indicating that on December 27, 1999, the parties paid $19,700 to James Dillard for a truck. The wife testified that she drives a 1997 El Dorado Cadillac; the wife estimated the vehicle was worth approximately $11,000.
According to the wife, the husband withdrew all of the money from the parties’ *513 joint bank account in December 2002. A December 2002 bank statement admitted into evidence at trial indicated that $18,879 was withdrawn from the parties’ joint bank account that month. The husband testified that the wife had not deposited any money into that account in the three years before December 2002, with the exception of the $15,000 from her IRA that was used to purchase the husband’s truck.
The wife testified that during the parties’ marriage she withdrew substantial amounts of money from her IRA. Several tax returns admitted into evidence indicate that, in addition to the $15,000 distribution used to purchase the husband’s truck, the wife received a $6,936 distribution from her IRA in 1992, a $22,603 distribution from her IRA in 2000, and a $6,000 distribution from her IRA in 2001. The wife testified that she also withdrew $8,000 from her IRA shortly before the hearing in this matter. In addition to those distributions, the wife also received a $10,698.50 lump-sum Social Security disability settlement in 2001. The wife testified that the money from the Social Security disability settlement went to purchase Christmas gifts for the family and to pay for other household needs. According to the wife, she had received more than $47,000 from IRA distributions and the Social Security disability settlement during the two years before the trial.
The wife testified that the $8,000 she withdrew from her IRA before the hearing was used to pay her attorney fees and to make payments on her credit cards. The wife’s credit-card statements admitted into evidence at trial revealed that she had an outstanding balance of $1,319.86 on her Chase Mastercard credit card and that she had an outstanding balance of $1,841.36 on her Discover credit card. The wife testified that the charges on her credit cards were all charges to “QVC.”[1]
Before the parties’ marriage, the husband was employed with the United States Air Force. The husband testified that he is now retired from active military duty and that he receives $1,311.44 each month in retirement benefits from the military. At the time the parties married, the husband was employed with Computer Science Corporation. In June 1989, one month after the parties married, the husband had a balance of $9,935.97 in a “Matched Asset Plan” (a retirement account) through his employment with that company. On March 30, 2003, the “Matched Asset Plan” had a balance of $38,099.07. The husband testified that before the parties’ marriage he had purchased an IRA with A.G. Edwards and Sons, Inc. According to an April 25, 2003, statement of that account admitted into evidence at trial, the account was valued at $16,045.38. The husband testified that he had not withdrawn or deposited any money into that account during the parties’ marriage. According to the husband’s personal-benefits statement admitted into evidence at trial, if the husband retired at the age of 62, he would receive $921 in monthly retirement benefits.
The husband is currently employed as a civil servant for the United States Air Force. The husband earns $3,331 per month in the civil service. The husband first began his employment as a civil servant in 1992; since that time, he has participated in a “Thrift Savings Plan,” a retirement plan. According to the husband’s “Leave and Earning Statement” admitted into evidence at trial, $321.31 is deducted from the husband’s gross income each pay period and placed in the “Thrift Savings Plan.” The husband testified that the “Thrift Savings Plan” was an account set *514 up for his retirement and that it was worth approximately $102,000 at the time of trial.
The husband testified that he was aware of a $15,000 withdrawal from the wife’s IRA within the three years before the trial. According to the husband, that withdrawal was used to purchase a truck for him. The husband testified that the wife did withdraw $22,603 in 2000 to help her daughter “get her life straight.” The husband stated that he did not approve of the wife’s decision to withdraw those funds from her IRA and that he took no part in helping the wife’s daughter. The husband testified that he was unaware of any other distributions from the wife’s IRA and Social Security disability settlement.
The husband testified that there was no indebtedness on the parties’ vehicles. The husband submitted valuations by the National Automobile Dealers Association (“NADA”) for the parties’ vehicles. Those valuations indicated that the husband’s truck was worth $12,375 and that the wife’s car was worth $18,050.
The husband testified that he had paid the household bills for the three and one-half years before the trial, after the wife became disabled. The wife testified that since her disability she had stopped depositing her monthly income into the parties’ joint bank account and had deposited her money into a separate bank account with Cómala Credit Union. The husband testified that he was unaware of how the wife spent the $1,090.57 she received monthly from her Social Security disability benefits and her Cruett Peabody pension. According to the husband, the wife had a gambling problem and frequently ordered merchandise from “QVC.” The wife denied having a gambling problem.
The parties own their marital home, subject to a mortgage; however, neither the husband nor the wife testified regarding the value of the marital home or the amount of outstanding mortgage indebtedness on the home. The parties agreed, before trial, to sell the marital home and to divide equally the net proceeds from the sale. The parties further stipulated that the husband would advance the wife $30,000 before the sale of the marital home in exchange for the wife’s moving out of the home and that the husband would be credited that amount against the wife’s half of the equity in the home once it was sold.
The wife submitted an itemized list of her monthly expenses, which totaled $2,987; that amount included $1,100 for the mortgage payment on the marital home. The husband also submitted an itemized list of his monthly expenses, totaling $3,812; that amount included a $2,000 mortgage payment. The husband testified that he wanted to increase the amount of his monthly mortgage payments so that he could retire in five years, at the age of 62, without a mortgage payment.
The trial court’s August 6, 2003, judgment, among other things, ordered the husband to pay the wife $200 per month in periodic alimony until the marital home was sold. The wife was awarded one-half of the net proceeds from the sale of the home. The husband was ordered to pay the wife $325 per month in periodic alimony following the sale of the home. The trial court further ordered the husband to pay the wife $6,000 in alimony in gross. The trial court awarded the husband and the wife the retirement accounts held in their respective names. The husband was awarded the 1998 Chevrolet truck and the wife was awarded the 1997 Cadillac. The parties were each held responsible for their own credit-card indebtedness. The husband was ordered to continue paying the mortgage and household expenses until the marital home was sold.
*515 On appeal, the wife argues that the trial court abused its discretion in fashioning its property division and its alimony award. In making this argument, the wife primarily asserts that the trial court’s alimony award was inequitable given the large discrepancy in the parties’ monthly income and the substantial difference in the value of the parties’ retirement accounts.
It is well established that a trial court’s determination regarding a property division and an award of alimony is entitled to a presumption of correctness and that its rulings on those matters will not be reversed absent a showing of plain and palpable error. Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App.1987); Parrish v. Parrish, 617 So.2d 1086 (Ala. Civ.App.1993); Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). The issues of property division and alimony are interrelated, and they must be considered together on appeal. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.1996). A property division must be equitable, but not necessarily equal; the trial court determines what is equitable. Duckett v. Duckett, 669 So.2d 195 (Ala.Civ.App.1995); Parrish, supra. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, supra; Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986).
In support of her argument on appeal that the trial court’s alimony award and property division are not equitable, the wife points to several alleged .misstatements of facts contained in the trial court’s judgment of divorce. The wife alleges that the trial court misstated the length of the parties’ marriage and the amount of the husband’s monthly income. The trial court’s judgment states that the parties were married for 13 years. The wife contends on appeal that the parties were married for 14 years. The parties were married on May 20, 1989, and they were divorced by a judgment of the trial court on August 6, 2003. Thus, the parties were married for 14 years and not 13 years as stated in the trial court’s August 6, 2003, divorce judgment. However, the one-year difference between the actual length of the parties’ marriage and the trial court’s determination in its August 6, 2003, judgment is not so great as to alter the result reached by the trial court. Any errop the trial court made in its statement of the length of the parties’ marriage was harmless. See Rule 45, Ala. R.App. P. (“the harmless-error rule”).
The judgment of the trial court also stated that the- husband received retirement income of $1,311 per month and that he earned $3,331 per month in his present job. The wife asserts on appeal that the trial court’s use of the term “earns” indicates that the trial court was referring to gross income. The wife contends that the trial court’s judgment" misstated the husband’s employment income by more than $2,500 per month. The wife further contends that, even if the amount stated in the trial court’s judgment refers to net income, it is still, incorrect because, she says, that amount does not consider the pretax dollars taken out of the husband’s gross pay that he contributes to his “Thrift Savings Plan” retirement account.
The husband’s employment-earning statement and retirement-account statement were admitted into evidence at trial. The husband’s earning statement indicates that he earns $1,537.68 in net income every two weeks and that he is paid 26 times per year. Thusj the husband has a yearly net income of $39,979.68; when that figure is divided by 12, it reveals that he has a *516 monthly net income of $3,331.64 — exactly the amount determined by the trial court. The husband’s retirement-account statement indicates that he receives $1,311.44 per month in benefits. In light of the foregoing, we cannot say that the trial court misstated the husband’s monthly income.
In support of her argument that the trial court’s alimony award and property division is not equitable, the wife also asserts that the trial court disregarded the parties’ agreement regarding the sale of the marital residence. According to the wife, the parties agreed to list the marital home “for sale by owner” for 2 months as opposed to the trial court’s directive to list the home “for sale by owner” for 12 months.[2] The parties agreed to the sale of the marital home immediately before the trial court heard testimony at the July 23, 2003, hearing. At that time, the following discussion took place between the trial court and counsel for the parties.
“[THE TRIAL COURT]: Let’s get that in the Order. The on site agent, multiple listing.
“[COUNSEL FOR THE WIFE]: I’ll be honest with you. I would not object if they tried to sell it by owner first because those houses out there are selling pretty quickly.
“[THE TRIAL COURT]: Y’all could save money doing it that way.
“[COUNSEL FOR THE WIFE]: That’s right.
“[THE TRIAL COURT]: I will leave it up to you.
“[COUNSEL FOR THE HUSBAND]: Do you want to do that for two months, sale by owner for two months?
“[COUNSEL FOR THE WIFE]: I think it’ll sell quicker than two months.
“[COUNSEL FOR THE HUSBAND]: Yeah, you want to save the six percent commission and it’s going to be worth it in a house of that value.”
It appears that, from the exchange that took place between the trial court and counsel for the parties, the parties had agreed only that the house could be listed “for sale by owner.” While counsel for the husband suggested a two-month limitation on the sale, the parties did not agree to that term. The remaining portion of the record does not indicate that the parties revisited their discussion of the sale of the marital home. However, a trial court has broad discretion in fashioning its property division, Parrish v. Parrish, supra. Also, a trial court is not bound by an agreement of the parties. Junkin v. Jun-Jun, 647 So.2d 797 (Ala.Civ.App.1994). Therefore, we cannot say that the trial court erred by directing that the house be listed “for sale by owner” for 12 months.
In making her argument that the trial court’s alimony award and property division are not equitable, the wife notes that the trial court’s August 6, 2003, divorce judgment awarded the wife one-half of the equity in the marital home; $200 per month in periodic alimony until the marital home is sold and $325 per month in periodic alimony thereafter; $6,000 in alimony in gross; the 1997 Cadillac valued by NADA at $18,050; and her IRA valued at $12,546.88. The husband was awarded one-half of the equity in the marital home; the 1998 Chevrolet truck valued by NADA at $12,375; and all of the retirement ac *517 counts held in his name, including the “Thrift Savings Plan” retirement account valued at approximately. $102,000, the Computer Science Corporation “Matched Asset Plan” retirement account valued at $38,099.07, and the IRA with A.G. Edwards valued at $16,045.38.
At the time of trial, the wife was 63 years old and the husband was 57 years old. The wife is disabled and has an income of $1,090.57 per month. The husband earns $4,643.08 per month in employment and retirement income. The wife submitted an exhibit that indicated that her monthly living expenses were $2,987 per month. The wife has an IRA valued at $12,546.88. The husband’s retirement accounts collectively exceed $150,000.
In Wilkinson v. Wilkinson, 828 So.2d 924 (Ala.Civ.App.2001), this court reversed a trial court’s judgment awarding a disabled husband only $400 per month in periodic alimony. The husband in Wilkinson received $834 per month in disability benefits and had never accumulated retirement benefits. The wife earned $55,200 per year in employment income and had a retirement account valued at $105,000. During the parties’ 15-year marriage, the husband had contributed $500 each month toward household expenses and had contributed $10,500 from a $41,000 inheritance for improvements to the marital residence and for the wife’s personal use. This court held, in part, that
“[t]he trial court’s award of $400 per month in periodic alimony, as compared to the wife’s income of over $4,000 per month, ‘runs counter to the generally accepted purpose of alimony which is to preserve the economic status of the parties as it existed during the marriage.’ ”
Wilkinson, 828 So.2d at 928 (quoting Grice v. Grice, 673 So.2d 772, 775 (Ala.Civ.App.1995)).
In the instant case, the parties were married for 14 years. The wife is disabled and receives Social Security disability benefits. The amount of the trial court’s periodic-alimony award and the wife’s monthly income do not even meet the amount of the wife’s stated monthly expenses. The record indicates that during the parties’ marriage the wife used funds from her IRA for the benefit of the marriage, whereas the husband contributed no money from his retirement accounts to benefit the marriage. This court has previously held that “[a]n interest in a retirement account is an asset that may be considered in effecting an equitable property division.” G.K.M. v. E.B.M., 728 So.2d 1102, 1104 (Ala.Civ.App.1998). The wife has a retirement account valued at $12,546.88, but the husband has multiple retirement accounts worth over $150,000, of which $102,000 was accumulated solely during the parties’ marriage.
Considering the length of the parties’ marriage, the great disparity in monthly income between the parties, the disparity in the values of the parties’ retirement accounts and the wife’s significant contributions from her IRA during the parties’ marriage, we conclude that the property division and the award of periodic alimony were not equitable. See Parrish v. Parrish, supra. We must hold that the property division and the award of periodic alimony amount to an abuse of the trial court’s discretion.
Accordingly, the judgment of the trial court is reversed insofar as it pertains to the division of property and the award of periodic alimony, and the cause is remanded for the trial court to fashion an equitable division of the marital assets and to reconsider the question of alimony.
The wife’s request for an attorney fee on appeal is granted, in the amount of $1,000.
REVERSED AND REMANDED.
*518 PITTMAN and MURDOCK, JJ., concur.
CRAWLEY, J., concurs in the result, without writing.
YATES, P.J., recuses herself.

. The charges to "QVC” appear to be charges to a home-shopping network on television.

. The record indicates that the wife did not file a postjudgment motion pursuant to Rule 60(a), Ala. R. Civ. P., which allows a trial court to correct "[cjlerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission.” Because it is not clear from the record that the directive to list the home "for sale by owner” for "12 months” was a clerical error, we reach the merits of this issue.