John Deiter Diggs ("the husband") appeals a divorce judgment entered by the Dale Circuit Court insofar as it awarded *Page 204 
Tina M. Diggs ("the wife") periodic alimony and an attorney's fee.
The husband sued the wife for a divorce on the grounds of adultery, incompatibility, and an irretrievable breakdown of the marriage. The wife answered and counterclaimed for a divorce on the grounds of incompatibility and an irretrievable break-down of the marriage. In her answer, the wife admitted that she committed adultery; however, the wife alleged that the husband had condoned the adultery.
On March 21, 2007, the trial court held a hearing at which it received evidence ore tenus. The trial court then entered a judgment on March 28, 2007, that awarded the wife, among other things, periodic alimony in the amount of $2,000 per month for a period of 36 months and an attorney's fee in the amount of $2,000.
On April 20, 2007, the husband moved the trial court for a new trial pursuant to Rule 59, Ala. R. Civ. P. On June 25, 2007, the husband filed an amended motion for a new trial alleging, in pertinent part, that he had lost the job that had been his primary source of income. After holding a hearing, the trial court, on July 27, 2007, entered an order that purported to grant the husband's motion for a new trial — as to the issue of alimony — on the ground that the husband had introduced new evidence regarding his health and income. However, on August 13, 2007, the trial court entered an order stating as follows: "As [the husband's] motion for new trial has been denied by operation of law, hearing on order granting said motion is set aside."[1] The husband then timely appealed.
On appeal, the husband argues that the trial court exceeded its discretion in awarding the wife periodic alimony in the amount of $2,000 per month for 36 months and that the division of the parties' property was unfair and inequitable. Specifically, the husband argues that, because he lost his primary source of income subsequent to the entry of the divorce judgment, he cannot afford to pay $2,000 per month in periodic alimony. Additionally, the husband argues that the trial court's periodicalimony award constituted an abuse of discretion because "[t]he wife presented no evidence of her living expenses other than a generalized statement saying that she needed $2,500.00 per month to maintain her style of living."
The parties began cohabiting in 1993 and were married in 1998. Both the husband and the wife testified that they separated several times during the marriage. The husband testified that they were separated for "a year or two at the time"; however, the wife testified that they did not remain separated for more than "4 or 5 months at any given time." The wife has two children, neither of whom were born of her marriage to the husband. The wife has a son, born in 1989, from a prior marriage.[2] The wife also has a son, born in 2005, from an extramarital relationship with another man ("the paramour"). The husband has two children from a prior marriage, both of whom were of the age of majority at the time of trial.
The husband was 62 years old at the time of trial. The evidence shows that the husband suffers from high blood pressure. The husband has both a bachelor of science *Page 205 
degree and a master of science degree in biological sciences and a doctorate degree in veterinary medicine. At the time of trial, the husband, who served in the United States Army for 12 years, had been employed as a flight instructor at Fort Rucker for 21 years. The husband also owns a veterinary clinic at which he works in the afternoons as a veterinarian. At the time of trial, the husband was earning an income of approximately $100,000 per year from his jobs as a flight instructor and a veterinarian.
The wife was 39 years old at the time of trial. The wife suffered from a number of health problems during the marriage. The wife attended Troy University, Dothan Campus, for three years but did not graduate.[3] The wife worked sporadically, both while the parties cohabited and subsequent to their marriage, as a bookkeeper for the husband's veterinary clinic, earning no more than $10,000 annually. Additionally, during the final year of the parties' marriage, the husband purchased for the wife a small clothing boutique in Enterprise named "The Freckled Frog." At trial, the wife contended that "The Freckled Frog" was unprofitable; however, the husband contended that "The Freckled Frog" had the "capability" of producing more than $85,000 in annual income.[4] In any event, it is undisputed that the wife's income was sporadic and nominal and that the parties' expenses were paid for primarily, if not solely, from the husband's income.[5]
The parties testified regarding the breakdown of the marriage. The husband stated, as noted above, that the wife had had an extramarital affair that resulted in a child being born to the wife and the paramour. The husband also testified that the wife had been convicted and placed on probation "for falsifying prescriptions" from his veterinary clinic. The husband further testified that the wife had forged his signature on checks drawn on the veterinary clinic's account. The husband testified that the wife had stolen between $50,000 and $70,000 from the veterinary clinic by way of the forged checks.
The wife testified that the breakdown of the marriage was due to the husband's controlling nature. Specifically, the wife testified that the husband had filed for divorce twice previously and that those filings were attempts to control the wife. The wife also testified that the husband had lied under oath — to her detriment — *Page 206 
while testifying during her trial on the charges that she had falsified certain prescriptions from the veterinary clinic. The wife further testified that the husband has a "very bad temper."
The trial court received evidence of the parties' marital assets. The husband's assets consist of substantial holdings of real property, which have an approximate net value of $456,700; numerous motor vehicles and related items, including several automobiles, a tractor, a boat, a trailer, and several plows, which have an approximate value of $117,300; a retirement account that is valued at $109,000 and encumbered with a debt of $32,000; and other personal property. The wife's marital assets consist of a 1997 Lexus automobile, which was purchased by the husband in 2003 for $31,000 and is titled in the husband's name; "The Freckled Frog" store; and other personal property.
At trial, neither the husband nor the wife introduced documentary evidence or testified specifically regarding their individual monthly expenses. The husband introduced evidence regarding his consumer debt, which totals $216,615. For all that appears in the record, the wife has no debt other than an outstanding attorney's fee from a previous criminal prosecution.
 "The well-established standard of review is that a divorce judgment based on ore tenus evidence is presumed correct. See Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App. 2001). Such a judgment will be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Id. at 733. On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O'Neal v. O'Neal 678 So.2d 161 (Ala.Civ.App. 1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605
(Ala.Civ.App. 1996).
 "When dividing marital property and determining a party's need for alimony, a trial court should consider several factors, including `"the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage."' Ex parte Elliott, 782 So.2d 308 (Ala. 2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129
(Ala.Civ.App. 1985)) (footnote omitted). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility. . . . Ex parte Drummond, 785 So.2d 358 (Ala. 2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App. 1998). It is well-settled that where a trial court does not make specific factual findings, the appellate court must assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. Ex parte Farm, 810 So.2d 631
(Ala. 2001); Ex parte Bryowsky, 676 So.2d 1322
(Ala. 1996)."
Baggett v. Baggett, 855 So.2d 556, 559-60
(Ala.Civ.App. 2003).
The trial court awarded the wife approximately $353,000 in marital assets, which include (1) "the house and lot located at 1366 Campground Road and its contents," (2) "the mobile home and lot located at West Bay and all its contents," (3) "The Freckled Frog," (4) the 1997 Lexus automobile, *Page 207 
and (5) all other personal property in the wife's possession. In addition, as noted above, the trial court awarded the wife $2,000 in monthly periodic alimony for a period of 36 months and ordered the husband to pay the wife $2,000 as an attorney's fee.
In comparison, the trial court awarded the husband approximately $860,400 in marital assets, which include (1) "the [marital] house and lot located at 100 Killebrew Street and its contents," (2) "the house and lot located at 2082 Campground Road subject to any interest of the current occupants," (3) all other real property not otherwise provided for in the judgment, (4) the veterinary clinic, (5) all other automobiles, motor vehicles, and tractors and farm equipment and implements, (5) his 401K retirement fund, and (6) all other personal property in the husband's possession. The trial court also required the husband to assume marital debts in the amount of $216,615, thus reducing the value of the husband's property award to approximately $643,785. Based on the facts of this case, because the trial court awarded the husband a greater amount of marital assets than the wife, we cannot hold the trial court in error based upon its property and alimony awards. See Diggs v.Diggs, 910 So.2d 1274, 1277 (Ala.Civ.App. 2005) (concluding that "because the divorce judgment awarded the husband all of the securities [and additional marital assets that, when combined with the securities, had a total value greater than those marital assets awarded to the wife], we cannot hold, given the facts of this case, that the trial court's property division was inequitable").
The husband next argues that the trial court exceeded its discretion in awarding the wife $2,000 in monthly periodic alimony because, he argues, he lost his job as a flight instructor subsequent to the entry of the trial court's final judgment and now allegedly cannot afford the alimony payments. The husband appears to request that this court find error with the trial court's award of periodic alimony based upon facts not in evidence — or in existence, for that matter — at the time the divorce judgment was entered. However, it is undisputed that the evidence regarding the husband's loss of income was not before the trial court before the hearing on the husband's motion for a new trial. We simply cannot hold that the trial court exceeded its discretion in entering its alimony award; the evidence that the husband relies on was not before the trial court at the time the divorce judgment was entered and thus could not be considered in determining the periodicalimony award. Cf. Estrada v. Bedford, 855 So.2d 551, 554
(Ala.Civ.App. 2003) (holding, in part, that a change in the mother's income that occurred after the trial was "new evidence" and that, when a party has new evidence related to his or her income, he or she may be entitled to a modification of a child-support obligation if he or she files a petition to modify; however, because the mother had filed a postjudgment motion rather than a petition to modify her child-support obligation, her request to modify child support was not properly before the trial court).
The husband next argues that the trial court exceeded its discretion in dividing the parties' property because, he alleges, the trial court awarded property to the wife "that the husband had purchased in the 1960's." However, the husband does not specifically, or even in the most general terms, identify the property he brought into the marriage that was improperly awarded to the wife in the divorce judgment. Furthermore, the husband's entire argument on this issue consists of nothing more than scant argument that is wholly *Page 208 
unsupported by citation to the record or legal authority. "`"Where an appellant fails to cite any authority, we may affirm, for it is neither our duty nor [our] function to perform all of the legal research for an appellant."'" Crutcher v.Wendy's of North Alabama, Inc., 857 So.2d 82, 97 (Ala. 2003) (quoting McLemore v. Fleming, 604 So.2d 353, 353
(Ala. 1992), quoting in turn Gibson v. Nix,460 So.2d 1346, 1347 (Ala.Civ.App. 1984)). Accordingly, we will not consider this argument.
Finally, the husband argues that the trial court exceeded its discretion in awarding the wife $2,000 for her attorney's fee. This court has previously stated: "The amount of attorney's fees awarded is also a matter within the trial court's discretion and will not be reversed except for clear abuse of that discretion."Goree v. Dark, 550 So.2d 436, 438 (Ala.Civ.App. 1989). Considering the substantial amount of marital assets awarded to the husband and the parties' respective earning abilities, we conclude that the trial court did not exceed its discretion in awarding the wife an attorney's fee in the amount of $2,000.
AFFIRMED.
All the judges concur.
[1] The husband's motion for a new trial was denied by operation of law on July 19, 2007, eight days before the entry of the trial court's order purporting to grant the husband's motion. See Rule 59.1, Ala. R. Civ. P.
[2] The wife does not have custody of her older son, who was 17 years old at the time of trial. The wife was required to pay child support for her older son pursuant to a court order from the older son's home state of Florida.
[3] The record does not indicate how many credits the wife earned during the three years that she attended Troy University. At trial, the wife testified that she would "need probably about a year to a year and a half [to complete college], to be realistic, since I have a child now."
[4] At trial, the wife contended that "The Freckled Frog" store in Enterprise had gross sales of $40,000 during the previous year and that she "didn't make any money." The wife further contended that the husband's estimates of the earning potential of the store were erroneously based upon the gross sales from "The Freckled Frog" store that is located in Dothan. For all that appears in the record, neither the husband nor the wife has any involvement with or ownership of "The Freckled Frog" store that is located in Dothan.
[5] At trial, the wife testified that she had access to a bank account in which the paramour — the natural father of her younger son — had deposited at least $2,100. The wife also testified that the money in that account was used for "clothing and things like that" for her younger son. The wife further testified that the paramour had asked her to sell his BMW automobile and that, after she had used a portion of the proceeds from the sale to pay the remaining loan balance on the BMW, the paramour had allowed her to spend the remaining $ 1,000 in proceeds from the sale on clothes, food, and diapers for her younger son.