Randall Myrick and Helen Myrick married on October 7, 1967. Three children were born of the marriage; all three children are now adults. The parties separated on November 22, 1996. The wife filed a complaint for a divorce on December 5, 1996. After a trial, the trial court divorced the parties on April 15, 1997.
On April 25, 1997, the wife filed a Rule 59, Ala. R. Civ. P., motion to alter, amend, or vacate the judgment. On June 27, 1997, the wife filed a motion to have the husband held *Page 313 
in contempt for his refusal to pay the alimony ordered in a pendente lite order. On July 18, 1997, the trial court denied both of the wife's pending motions. The wife appeals, arguing that the trial court abused its discretion in its division of property and its award of alimony, in refusing to award her an attorney fee, and in refusing to award her a judgment for the amount of past-due pendente lite support.
A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish,617 So.2d 1036 (Ala.Civ.App. 1993). On appeal, the issues of alimony and property division must be considered together; the trial court's judgment as to those issues will not be disturbed absent a finding that it is so unsupported by the evidence as to amount to an abuse of discretion. Id. An equitable, rather than an equal, division of marital assets is required. Id. The factors the trial court should consider in fashioning its property division include "the ages and health of the parties, the length of their marriage, their station in life and their future prospects, their standard of living and each party's potential for maintaining that standard after the divorce, the value and type of property they own, and the source of their common property." Covington v. Covington, 675 So.2d 436, 438
(Ala.Civ.App. 1996).
During most of the marriage, the wife reared the parties' children and took care of their home. The wife worked outside the home intermittently during the parties' 29-year marriage, but she was not employed at the time of the parties' separation and divorce. The wife has a GED and is a licensed practical nurse, although her license lapsed in 1994. At trial, the wife testified that she was in the process of renewing her nursing license.
The husband is self-employed as the owner of a convenience store. The parties jointly owned the store building and the land on which it was located. However, the business itself was incorporated and the husband was the sole stockholder in the corporation.
The value of the convenience store was contested at the trial. The wife and two of the parties' adult children, who had been employed in their father's convenience store business, testified that the business was worth $350,000 and that the husband had turned down a purchase offer of $250,000. The husband testified that the business was worth only $150,000. The wife and children testified that the gross receipts from the business were approximately $40,000 to $50,000 per month, but the husband testified that the monthly gross receipts were not that high and that the business lost money in 1996. One month after the parties separated, the husband cut his salary from the business in half.
The parties testified that the marital home was worth approximately $145,000 and that the mortgage balance on the home was approximately $40,000. The wife testified that the proceeds of the loan secured by the mortgage on the marital home were used to purchase the convenience store business. On cross-examination, the husband's attorney asked the wife if the money borrowed could have been used for various home improvements and the purchase of a vehicle. The wife answered that she did not know. The husband never testified that the loan proceeds were used for those purposes.
The day the husband left the marital home, he withdrew $59,000 from the parties' joint savings account, leaving a $2,000 balance in the account.[1] At the time of trial, the parties had an account with Merrill Lynch with a balance of approximately $47,000. The husband had a 401(k) plan from a former employer with a balance of approximately $1,500. The husband also had a retirement account with another former employer.[2] *Page 314 
Immediately after the parties' separation, the wife used the husband's Visa credit card to obtain a $4,450 cash advance. She testified that she had used $3,500 of that advance to retain her attorney and the rest for living expenses for the months since the parties separated. During the parties' separation, the wife was hospitalized and incurred a $3,445 hospital bill.
The parties disputed the values of other property that they owned. The parties owned a house on a river that they valued at between $30,000 and $45,000. The parties also owned eight-and-one-half acres of land. The husband testified that that property was worth approximately $17,000. The wife testified that it was worth approximately $68,000. The wife based her estimate on an earlier sale of one acre from the parcel of land to an adjoining landowner for $8,000.
The parties owned a pontoon boat and a bass boat and owed debts secured by each of the boats. The parties also owned a 1955 Chevrolet that the husband valued at $10,000 and the wife valued at $18,000. The husband owned a Nissan truck and had just purchased a new Chevrolet truck. The indebtedness on the van that the wife drives was paid off in the month the trial court entered its judgment.
The husband inherited three-and-one-half acres from his mother. He receives $300 per month as rental income from three trailers on that property. The parties testified that the husband had not used the income from that property for the benefit of the parties during their marriage, so the trial court, properly, did not consider this asset in its property division. See § 30-2-51, Ala. Code 1975.
At trial, the wife asked to be awarded the value of at least one of the four cemetery plots owned by the couple. The husband purchased those lots, which are located beside his family's graves, for $995. The wife testified that each lot is now worth $995. Further, the testimony of the wife and two of the parties' three children tended to establish that the father had committed adultery, probably while the parties were living together, and definitely immediately after the parties separated.
In its judgment, the trial court awarded the wife the marital home and ordered that she be solely responsible for paying the mortgage on the home. The wife was also awarded the 8 1/2 acres of land, the funds in the Merrill Lynch account, the van that she drives, and $450 per month in alimony. The trial court awarded the husband the business and the property upon which it is located, the house at the river, all funds from his retirement account and 401(k) plan, all of the cemetery lots, both boats, and both trucks. The husband is responsible for the debt on the boats and the new truck, as well as some other debts, including his Visa account and the wife's hospital bill.
Given the length of the parties' marriage, their ages and respective future prospects, and the husband's conduct, we cannot say that the trial court's property division or its award of alimony was equitable. The husband has a long history of continued employment, while the wife worked only occasionally during the parties' almost 30-year marriage; she must now seek employment at entry level. The husband has been awarded a sole interest in the business that has been the couple's livelihood for approximately 10 years. The wife was awarded the marital home subject to a mortgage that the evidence indicates financed the business that was awarded to the husband. The monthly mortgage payment alone is several hundred dollars greater than the periodic alimony the trial court ordered that the husband pay the wife. "The purpose of periodic alimony is to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until the spouse is self-supporting or maintaining a status similar to the one enjoyed during the marriage."Warner v. Warner, 693 So.2d 487, 488 (Ala.Civ.App. 1997) (quoting O'Neal v. *Page 315 O'Neal, 678 So.2d 161, 165 (Ala.Civ.App. 1996)).
We also note that although the trial court divorced the parties on the grounds of incompatibility of temperament, there is considerable evidence in the record to indicate that the husband's conduct was the primary reason for the breakdown of the marriage. "[A]dultery may be inferred from circumstances leading to it as a necessary inference."Slater v. Slater, 587 So.2d 376, 377 (Ala.Civ.App. 1991). Even where the parties are divorced on the grounds of incompatibility, the conduct of the parties and fault with regard to the breakdown of the marriage are factors for the trial court to consider in fashioning its property division.Huntress v. Huntress, 555 So.2d 1103 (Ala.Civ.App. 1989). The trial court's property division and its award of alimony do not enable the wife to maintain the status that she enjoyed while the parties were married. Given the facts of this case, especially the conduct of the husband, we cannot say that the property division and the alimony award were equitable. Therefore, we reverse those portions of the judgment.
The wife next argues that the trial court erred in refusing to award her a judgment for an accumulated arrearage of pendente lite alimony. We agree. On January 9, 1997, the trial court entered a pendente lite order requiring the husband to pay $450 per month in alimony to the wife. At the time of trial in 1997, the husband had not made an alimony payment; by the time of the trial court's April 15, 1997, final order, the husband was approximately four and a half months in arrears. The wife filed a motion to alter or amend the judgment; in that motion she requested that the trial court modify its judgment to award that alimony arrearage. The trial court denied the motion.
At the time of the wife's post-judgment motion, the husband was in arrears for approximately four months of the ordered pendente lite alimony payments. Past-due alimony installments create a final judgment on the date they become due.Andrews v. City Nat'l Bank of Birmingham, 349 So.2d 1
(Ala. 1977); Anderson v. Anderson, 686 So.2d 320
(Ala.Civ.App. 1996). The trial court erred in refusing to award the wife a judgment for the amount of the pendente lite alimony arrearage.
We note that in her statement of the issues in her brief on appeal, the wife argues that the trial court erred in refusing to hold the husband in contempt for his failure to pay the alimony awarded in the January 9, 1997, pendente lite order. However, the wife makes no argument in her brief on this issue, in contravention of the requirements of Rule 28, Ala. R.App. P. Therefore, this court may not consider the issue. "When an appellant fails to properly argue an issue, that issue is waived and will not be considered on appeal."Gonzalez v. Blue Cross/Blue Shield of Alabama, 689 So.2d 812,819 (Ala. 1997) (citations omitted).
The wife also argues that the trial court erred in refusing to award her an attorney fee. The award of an attorney fee in a divorce case is within the discretion of the trial court.Slater v. Slater, 587 So.2d 376 (Ala.Civ.App. 1991). During the trial, the wife testified that she spent $3,500 of the proceeds from the $4,450 cash advance she obtained shortly after the husband moved out of the marital home to retain her attorney. In the divorce judgment, although the trial court specified that neither party would be responsible for the other's attorney fee, the trial court ordered that the husband be responsible for the debt on the credit card from which the wife obtained the cash advance used to retain her attorney. Thus, the husband is required to repay the debt the wife incurred for her attorney fee. This award was within the trial court's discretion, and we find no error.
The wife's request for an attorney fee on appeal is granted in the amount of $1,000.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., concurs in the result.
CRAWLEY, J., dissents. *Page 316 
[1] On November 1, 1996, the balance in the joint savings account was approximately $4,000. On November 15, 1996, the parties deposited $20,000 in proceeds from a settlement from an action apparently regarding trespass to land. On November 22, 1996, the parties deposited $37,000 from the sale of a lake house. The husband returned to the bank later that day and withdrew $59,000, leaving an account balance of $2,000.
[2] The amount in this account is not apparent from the record. The husband did not respond to discovery requests to produce records for this account. The trial court requested that that information be submitted after the trial. However, the record on appeal does not contain any evidence regarding this retirement account.