PER CURIAM.
This case involving the divorce of Stuart C. Dubose (“the husband”) and Allison T. Dubose (“the wife”) has been before this court multiple times. The complete procedural history is not relevant to the issues . raised in this appeal.[1] The “Consolidated Final [Judgment]” in this case was entered on March 3, 2014. The husband timely appealed from that judgment, which incorporated previous orders of the Clarke Circuit Court (“the trial court”).
Because of the jurisdictional defects in the previous orders, which are discussed in the two earlier appeals in this case, this is the first opportunity this court has had to set forth the facts adduced at the eviden-tiary hearings. In their respective testimonies, the husband and the wife had little upon which they agreed, and the testimony often was contentious. The evidence relevant to the issues before us in this appeal indicates the following.[2] The husband and the wife married each other for the second time in January 1988. In 2008, the wife *236 filed a complaint seeking to divorce the husband. At the time the trial court entered an August 2009 order purporting to divorce the parties but retaining jurisdiction to decide all other matters related to the divorce in a subsequent proceeding, only one of the parties’ three children was a minor. That child, born in 1992, has since reached the age of majority.
The wife testified that she earned $325 a day as an independent contractor performing title searches. She said her monthly income was dependent on the number of days she worked each month. Records submitted into evidence indicate that she earned an average gross income of approximately $5,000 a month.
The husband testified that he has been disabled since 2003; according to the husband, he was injured when the recliner in which he was sitting collapsed, ejecting him and consequently breaking his back and neck. At the time of that accident, the husband had a law practice, operating out of two offices in southwest Alabama. Since the accident, the husband said, he has been in constant pain. The medications he takes for the pain, the husband said, resulted in his becoming “deeply depressed, apparently paranoid, and in need of psychiatric treatment.” The husband testified that he was unable to work at all for the first 18 months after the accident, after which he was able to work only on a limited basis, and that he was unable to continue in his law practice.
Despite his assertion that he was disabled at the time, the husband ran for circuit judge in 2006. The husband won what appeared to be a hotly contested election[3] to the circuit bench and took office in January 2007. However, while serving as a circuit judge, the husband was removed from the bench and was disbarred from the practice of law. At a November 30, 2009, hearing, the husband’s attorney asked him whether something had happened in the late spring or early summer of 2008 “that sort of interrupted your life.” The husband responded: “I was kidnapped at a doctor’s appointment.” The record indicates that, actually, federal law-enforcement officials arrested the husband, who was subsequently convicted of federal offenses and imprisoned until a few weeks before the November 30, 2009, hearing.[4]
The husband testified that because he suffers from debilitating pain as a result of the injuries he received in the 2003 accident, and because he has been disbarred from the practice of law, he is unable to earn an income and has no money from any source. He said that he has not attempted to obtain employment since leaving prison and that he relies on money from his parents to pay for food. He presented tax documents for the years after 2008 indicating that he had no income or that he had insufficient income to be required to file federal tax returns. The husband’s father, Melton Dubose (“Melton”) also testified that the husband has debt of more than $350,000, including mortgages and tax liabilities.[5]
*237 On the other hand, the wife introduced evidence indicating that, from 2006 through 2008, the husband had deposited $1,985,000 into various bank accounts in addition to the salary he had deposited into his business account. The husband’s testimony regarding the nearly $2 million was vague and evasive. He denied knowing the source of all of the money, asserting that loan proceeds accounted for some of the deposits. He claimed he did not “remember what particulars were done with any of the transactions that took place” in 2007 — a year in which he deposited $1,121,874.90 apart from his salary. When the wife’s attorney asked the husband to read from a loan document regarding when he received certain loan proceeds, the husband said that he did not know what the wife’s attorney was talking about and that the attorney would “have to point it out to me,” and he refused to read from the document. The husband testified that, in 2004 and 2005, he had withdrawn substantial amounts of money from one account to pay “for the expense of the farm, the offices, my medical bills, my family.” He said he also had paid at least $200,000 in attorney fees and that some of the deposits about which the wife had introduced evidence were “double counting.” The husband did not provide a further explanation as to the “double counting,” however. Much later, when it was mentioned that one of the husband’s boats had been sold, the husband stated that he had spent “probably a quarter [of] a million on boat racing, and boat stuff too.... That’s where a good [$]200,[000, $]300,000 worth of money went to.” The husband said that he had had four boats until 2007.
The husband also acknowledged that, after 2006, he paid a significant amount of money for coins. He first said that he used money from various accounts to buy the coins “to add to my collection.” He then said that he was attempting to avoid the crash of the stock market by investing in coins. Later, the husband testified that he also cashed in the life-insurance policies that he “knew [he] owned” to purchase coins.
The husband testified that he' had been collecting coins since 1963 and that, before 2006, the collection was worth “at least .$300,000 to $400,000.” He said that he purchased approximately $450,000 worth of coins from 2006 through 2008. The wife presented documentary evidence indicating that, from 2006 through 2008, the husband had purchased approximately $950,000 in coins, making the collection worth between $1.2 to $1.4 million. The husband testified that the wife’s figures were inaccurate, saying many of the deliveries of coins he had purchased were sent back.
At the time of the 2009 hearing, the bulk of the coin collection could not be located. The wife testified that, when she left the marital residence in March 2008, the coins were locked in a safe to which only the husband and she knew the combination. When she returned to the marital residence about two weeks later, the wife said, the coins were gone. She alleged that the husband had hidden the coins.
The husband denied any knowledge of what had become of the coins. He testified that he had left the marital residence the day before the wife in March 2008 and that all of his coin collection was in the house at that time. According to the husband, when he returned to the house he found that both his coin and gun collections were gone. The husband testified that some of the missing guns had be *238 longed to his father. Evidence indicated that agents of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (“ATF”) had seized coins and firearms from the house where the husband was living in the spring of 2008. However, an inventory of the coins seized indicated that most of the husband’s collection was not among the items the ATF seized.
The evidence also indicated that all of the real property and vehicles were deeded or titled in the husband’s name or in the name of the husband’s law firm. The husband also disputed the wife’s testimony that the parties had had a “family” banking account, testifying that there had not been a “family” account. Like the real property and the vehicles, the husband said, the account was in his name only, adding that it was his money.
In the final consolidated judgment, entered on March 8, 2014, the trial court found that the husband
“claims he is without any funds whatsoever. He continually denies he has or has access to the approximately $1.3 million in gold and other precious metal coins which this court does not find to be believable testimony. Additionally, although the [husband] claims he had been disabled for the past several years, he did run for circuit judge and was elected during this ‘disability’ period. Further, evidence was presented to this court from the [husband]’s personal checking account, first listed in his name, then Cattle Farms account and the same account being Circuit Judge account with the then Merchants Bank from a period of time of 2005-2008 to have approximately $2,302,234.39 in deposits .... The [husband] claims these sums of money were simply ‘double countings’ but cannot show any evidence of this to the court.”
The trial court took these large amounts of money into account when dividing the marital property, saying that it fashioned the property division “to offset the [husband’s] having this property.” If the husband had hidden or concealed the coins, money, guns, etc., the trial court wrote, a judgment lien was now placed on those items and the parties were to divide them equally. A number of other enumerated assets were to be sold and the proceeds awarded to the wife, including any livestock owned by the husband or the husband’s limited-liability company, Stave Creek Farm, LLC (“Stave Creek”). Melton had testified that Stave Creek was owned by the husband, and Melton did not claim any ownership in that company.
In addition, the wife was awarded the marital residence, and she was free to sell that residence if she chose. The wife also was awarded the 12 acres of land that adjoined the marital residence; 2 additional parcels of land described in the judgment, totaling 190 acres, if that property had not been foreclosed upon; and property situated along the Tombigbee River. The trial court also awarded the wife several parcels of land that made up what the parties said was the “family farm,” where the husband was living. That property was appraised at approximately $153,000. The trial court explicitly stated that the wife was awarded the farm “to attempt to offset the coins and guns hidden by [the husband].”
The husband was awarded the parcels of real property he owned with his father and his share of the property known as Dubose Family Farms, LLC (“Dubose Family Farms”). A final parcel of property was to be sold to pay the existing balance on the loan existing on that property. The husband was responsible for the balance remaining, if any, on the loan after the sale.
*239 The wife was awarded the 2006 Chevrolet Equinox that was in her possession but that was titled in the name of “Law Office of Stuart C. Dubose, P.C.” (“the law firm”). The title was to be transferred to the wife, and she was then to be responsible for any payments remaining on that vehicle. Likewise, the husband was ordered to transfer to the wife “complete ownership” of the 2007 Mazda 3S Sport vehicle driven by one of the parties’ children. “Complete ownership” of the 2003 Jetta driven by another child of the parties was to be transferred from the husband to that child. The trial court ordered the 2006 Corvette driven by the husband to be sold and the proceeds paid to the wife “as payment for child support and alimony until the [husband] shall begin making said payments out of funds earned by the [husband].” The husband was awarded the 1997 Chevrolet pickup truck in his possession and a 2001 Chevrolet vehicle he owned with his father. All other vehicles, including cars, trucks, farm equipment, and the like, were awarded to the wife to be kept or sold at her discretion.
The wife was also awarded the husband’s gun collection. The judgment stated that any of the husband’s guns that his family possessed were to be turned over to the wife. The trial court ordered the wife to sell the guns and to retain the proceeds. In ordering the sale of the guns, the trial court noted that the husband “will not be allowed by law to possess any firearms for a long period of time.” The parties’ children were allowed to keep any guns that the parties had given to them.
Each party was awarded his or her own household furnishings, personal bank accounts, items that had been in their respective families, and property acquired after March 25, 2008. The wife was awarded her individual retirement account, which had a balance of $58,539.89. In addition, the trial court ordered the husband to repay Melton, the husband’s father, for the alimony payments Melton made on behalf of the husband. The wife was expressly released from having to repay Melton for the amounts he had paid on the husband’s behalf. The wife was not awarded any alimony in the final judgment. The husband timely appealed.
The husband contends that the trial court erred when it imputed “child support” rather than imputing “income” in the judgment. The husband asserts that the undisputed evidence indicated that, other than Social Security disability benefits, he had not earned any income since 2009 and that, because of his physical condition, he cannot be gainfully employed. The husband contends that the wife did not present evidence to refute his inability to work.
In the judgment, the trial court pointed out that the husband testified that he had no income, while other evidence indicated that, up until 2008, the husband had earned income of approximately $2 million. Accordingly, the trial court “impute[d] child support in the amount of $645” a month, which was to be applied retroactively from March 5, 2010, the date the trial court rendered an order (the order, was not actually entered until March 29, 2010) setting an interim amount of child support of $400 a month, until the child’s 19th birthday in November 2011.
Rule 32(C)(2), Ala. R. Jud. Admin., sets forth the manner in which child support is calculated, stating:
“A total child-support obligation is determined by adding the basic child-support obligation, work-related child-care costs, and health-insurance costs. The total child-support obligation shall be divided between the parents in proportion to their adjusted gross incomes. The obligation of each parent is computed by multiplying the total child-support *240 obligation by each parent’s percentage share of their combined adjusted gross income. The custodial parent shall be presumed to spend his or her share directly on the child.”
The judgment does not make clear whether the “imputed child support” referenced in the judgment is the total child-support obligation or whether it is the amount the trial court deemed to be the husband’s share. To complicate matters, the next paragraph of the judgment states that “neither party shall pay monthly child support payment,” and it sets forth the procedure the trial court will use “if in the future it is determined [child support is] to be due.” The same paragraph indicates that the wife’s attorney had completed the income affidavits and other forms required pursuant to Rule 32, Ala. R. Jud. Admin. However, during the hearing on the issue of child support after this court dismissed the husband’s first appeal in this case, the wife’s attorney told the trial court he had not prepared the required forms but that he could prepare an income affidavit to provide to the court. The husband states in his appellate brief that neither the wife nor the trial court submitted the forms required by Rule 32 for determining child support. In our review of the voluminous record in this case, we could not locate an income affidavit from the wife or a standardized “child-support-guidelines form” (Form CS-42), both of which are required to be included in the record. Rule 32(E), Ada. R. Jud. Admin. The wife has not provided this court with a brief on appeal; thus, the husband’s assertion that the proper child-support forms were not completed is not refuted.
Even if the required forms are not contained in the record, this court may affirm a child-support award if we are able to determine, from the evidence in the record, how the trial court reached its child-support calculation. Hayes v. Hayes, 949 So.2d 150, 154-55 (Ala.Civ.App.2006). In. this case, however, this court is unable to determine from the evidence in the record how the trial court determined the husband’s child-support obligation. Moreover, we note that in its order of March 29, 2010, the trial court ordered the husband to pay interim child support of $400 a month for the parties’ youngest child. That child reached the age of 19 years in November 2011, more than two years before the final judgment was entered. Accordingly, we reverse the judgment as to this issue, and we remand the case for the trial court to enter a child-support judgment that complies with Rule 32, Ala. R. Jud. Admin., enabling this court, if a subsequent appeal is filed, to determine how the trial court calculated the husband’s child-support obligation and to provide a meaningful review as to the propriety of that obligation. C.M.M. v. S.F., 975 So.2d 975, 982 (Ala.Civ.App.2007); Wilkerson v. Waldrop, 895 So.2d 347, 348-49 (Ala.Civ.App.2004).
The husband also argues that the trial court abused its discretion in dividing the marital property. Specifically, the husband argues, the trial court made a “one-sided property division greatly favoring the wife.”
“ At the outset we note that, in reviewing the judgment by the trial court, we are governed by the well-established ore tenus rule. Under this rule, when the trial court has been presented evidence in a divorce case ore tenus, its judgment will be presumed to be correct and will not be set aside by this court unless it is plainly and palpably wrong or unjust.’
“Brannon v. Brannon, 477 So.2d 445, 446 (Ala.Civ.App.1985).”
Adams v. Adams, 149 So.3d 1093, 1095 (Ala.Civ.App.2014).
*241 “Our standard of review regarding a property division and an award of periodic alimony is well settled.
“ ‘When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038.’
“Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
“ ‘The issues of property division and alimony are interrelated, and they must be considered together. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.199[5]). A property division is not required to be equal, but it must be equitable. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, [795 So.2d 729 (Ala.Civ.App.2001) ]; Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or, as here, where the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App.1998); Lutz v. Lutz, supra.’
“Pate v. Pate, 849 So.2d 972, 976 (Ala.Civ.App.2002).”
Spuhl v. Spuhl, 120 So.3d 1071, 1074-75 (Ala.Civ.App.2013).
In support of his contention that the trial court erred in dividing the marital property, the husband raises what he says are three specific errors. First, he says, the trial court’s finding that he had hidden coins, guns, and other assets was based purely on conjecture and was not supported by the evidence. Therefore, he argues, awarding the wife property to “offset” the allegedly hidden assets resulted in an inequitable division of marital property. In his brief on appeal, the husband does not provide guidance to this court as to the total value of the property awarded to the wife.
The evidence is undisputed that the husband had a coin collection valued at a minimum of $750,000. Other evidence indicated that the collection was valued at more than $1.2 million. The husband admitted that, beginning in 2006, he spent money from various bank and investment accounts to purchase coins “to add to his collection.” He later said that he purchased the coins to avoid the crash of the stock market.[6] He also acknowledged that he cashed in all of the life-insurance policies he knew he owned and used the proceeds *242 to buy coins. Both the husband and the wife testified that the coins were locked in a safe in the marital home when both left that residence in March 2008, but the coins were missing at the end of March 2008. Later, the ATF executed a search warrant at the farmhouse where the husband was living and seized coins that were part of the collection. We note that there is no evidence in the record to indicate that the husband filed a police report or an insurance claim regarding the missing coins. Furthermore, in his appellate brief, the husband does not provide this court with any indication of the monetary value of the marital assets that each party received in the trial court’s property division so that this court could conduct a meaningful comparison of that division. “[I]t is not the duty of the appellate court to search the record for evidence to support an appellant’s contention of error. Roberts v. NASCO Equip. Co., 986 So.2d 379 (Ala.2007).” Certain Underwriters at Lloyd’s, London v. Southern Natural Gas Co., 142 So.3d 436, 453 (Ala.2013).
From the evidence, the trial court reasonably could have concluded that the husband had removed the entire coin collection from the marital residence before the wife’s retúrn at the end of March 2008 and that he was in the process of hiding the collection, when the ATF executed the search warrant on the farmhouse. Moreover, the trial court expressly found that the husband’s testimony that he did not have access to the coins was not believable. In ore tenus proceedings, the trial court has the advantage of seeing and hearing the witnesses and assessing their demean- or and is in the best position to decide among conflicting testimony which testimony is to be believed. Horton v. Perkins, 17 So.3d 235, 240 (Ala.Civ.App.2009). Accordingly, we cannot say that the trial court’s decision to award the wife more assets than it did the husband in an attempt to offset the money the husband had invested in the coin collection constituted an abuse of discretion. See Ryland v. Ryland, 12 So.3d 1223, 1235 (Ala.Civ.App.2009) (concluding that evidence indicated that the husband had attempted to hide marital property and that, therefore, the trial court had not abused its discretion by requiring the husband to mortgage his properties to the wife until he complied with the trial court’s property division).
The husband also argues that the trial court erred in making awards of vehicles that did not belong to either the wife or to him but that, instead, he said, belonged to the law firm. The husband also argues that the trial court erred in awarding the wife cows, a bull, or other livestock that was owned by the husband’s limited liability company, Stave Creek. Because the husband’s law firm and Stave Creek are separate entities from the husband, and because as separate entities they were not parties to the divorce, the husband says, the trial court had no jurisdiction to award the vehicles and the livestock to the wife.
The husband also points out that Melton, the husband’s father, testified at the hearing that his limited liability company, Dubose Family Farms, owned a Caterpillar backhoe and a 90-horsepower tractor that the trial court had awarded to the wife. Melton also testified that he owned a 2000 model year bulldozer and two of the guns awarded to the wife, a Springfield 87-A .22-caliber rifle and a Sears and Roebuck 20-gauge shotgun, and that the husband’s brother owned the .22-caliber Beretta handgun awarded to the wife. Because, the husband says, the farm equipment and the guns belonged to Dubose Family Farms, Melton, or the husband’s brother, the husband argues that the trial *243 court improperly awarded those items to the wife.
The general rule is that a trial court in a divorce action lacks jurisdiction to divide property legally titled in the name of a third party not joined in the divorce action. Roubicek v. Roubicek, 246 Ala. 442, 449, 21 So.2d 244, 251 (1945). In Mosley v. Builders South, Inc., 41 So.3d 806, 811-12 (Ala.Civ.App.2010), this court discussed the exception to that general rule that has arisen in divorce cases:
“Tt is obvious that the [trial] court would be guilty of denying due process to the [third party] if the [trial] court should take property of the [third party] and give it to another in a proceeding where the [third party] was not a party and was not given the elemental right to be heard.’
“Boswell v. Boswell, 280 Ala. 53, 60, 189 So.2d 854, 860 (1966). Consistent with that reasoning, later Alabama cases have carved out an exception to the general rule that allows a divorce court to enter a judgment affecting property titled in the name of a third party when the third party appears in the divorce proceeding and, as the Boswell court put it, is ‘given the elemental right to be heard.’ See, e.g., Moody v. Moody, 339 So.2d 1030 (Ala.Civ.App.1976) (hplding that, because the attorney to whom the husband had purportedly conveyed a cabin lot represented the husband throughout the divorce proceeding in which ownership of the lot was litigated and passed to wife, the divorce court did not err in entering a judgment disposing of the cabin lot without formally joining the attorney as party).
“In Owen v. Miller, 414 So.2d 889 (Ala.1981), a divorcing husband and his sister held joint legal title to several bank accounts. The sister appeared at the divorce trial for the purposes of attempting to gain ownership of those accounts. Also, the sister filed a successful motion with the divorce court to release funds in a bank account she singly owned that the divorce court had mistaken for marital property. After the trial, the divorce court awarded ownership of the disputed bank accounts to the wife and the children of the husband. 414 So.2d at 890. The sister then filed an action against the wife, the children, and the bank holding the accounts, claiming ownership of the funds in the accounts. Our supreme court concluded that, although the sister had never been made a party to the divorce proceedings, she was bound by the divorce judgment under the doctrine of res judicata as ‘[a] non-party who has an interest sufficiently close to the matter litigated and who had an adequate opportunity to litigate the issue in the prior proceeding.’ 414 So.2d at 891.
“In Lyons v. Lyons, 340 So.2d 450 (Ala.Civ.App.1976), a husband argued on appeal that the circuit court that had adjudicated his divorce case ‘was without authority to direct conveyance of corporate property in a proceeding to which the corporation was not a party.’ Id. at 451. This court recognized the general rule asserted by the husband but held that an exception to that rule applied when one or both spouses treat a closely held corporation as an alter ego. Id. at 451-52. This court recognized that, in such cases, a divorce court has the authority to pierce the corporate veil and to divide corporate property without adding the corporation as a party so long as the principal of the corporation was properly before the court. Id. at 452. Lyons has often been cited as authorizing divorce courts to divide corporate assets under the alter-ego theory.”
*244 In this case, there is no evidence in the record to suggest that the husband did not adequately represent the interests of the law firm. Thus, the law firm was not deprived of its elemental right to be heard. Moreover, although the vehicles driven by the wife and one of the parties’ daughters were titled in the name of the law firm, evidence indicates that the wife and the daughter had exclusive use of those vehicles, i.e., the vehicles were not used by the law firm. Thus, evidence supports a finding that the law firm was treated as an alter ego. We find no error or abuse of discretion in the trial court’s judgment ordering the husband to transfer title of the vehicles at issue to the wife and the daughter, respectively.
Melton testified regarding the ownership of certain guns and farm equipment. He said that the husband had purchased the 90-horsepower tractor in November 2005 and had given it to Melton in 2006. Melton testified that the husband wanted to “write off’ the tractor and that he had wanted Melton to have it. Melton also testified that he purchased the bulldozer for $45,000 and that he had paid for substantial repairs to the backhoe.
As to the guns in his possession, Melton said that the Springfield rifle was the first gun he owned. He also stated that he purchased the Sears and Roebuck 20-gauge shotgun, which, he said, was the first gun the husband had. The 20-gauge shotgun was passed down to subsequent sons as each grew older, Melton said, “then [the husband] took it. I didn’t know it, but he had it, but it belongs to me.” Both the Springfield rifle and the 20-gauge shotgun were among the guns seized by the ATF. It also appears that the Beretta .22-caliber handgun was also seized. In the judgment, the trial court specifically awarded the wife the guns confiscated by the ATF, among other firearms.
In the judgment, the trial court also ordered that “all livestock, cows, bulls, whatever, etc., owned by [the husband] either personally or in any partnership, LLC or corporation in which he has an interest shall be immediately sold and all sales proceeds paid to the [wife] as property settlement.” Melton testified that he purchased the only bull at issue to replace two bulls of the husband’s that were sold in 2008. Melton testified that he claimed ownership of that bull and that it was located on his property.
The judgment does not explicitly determine the ownership of the guns Melton testified belonged to him or to the husband’s brother, a tractor that Melton said the husband gave to him, the bulldozer for which Melton paid, the backhoe for which Melton paid for repairs, or the bull. We note that the wife’s attorney stated at the hearing that Melton was entitled to retain property that he could prove belonged to him.
Because the ownership of the above-mentioned property was disputed and the judgment is unclear as to whether the guns, farm equipment, and the bull, or the proceeds from their sales, are to be awarded to the wife, on remand the trial court is to clarify the final judgment as to the ownership of the property at issue. If the trial court determines that the husband did not own the guns, farm equipment, or the bull, the judgment should clarify the disposition of that property.
The husband asserts that the wife failed to prove the ownership of other vehicles or farm equipment that she was awarded, such as a “damaged four-wheeler,” a horse trailer, and a 1984 Bronco automobile. During the wife’s testimony, those items were mentioned as being among the marital assets subject to division. Our review *245 of the record indicates that the husband did not dispute that those items were marital assets. Accordingly, we find this issue to be without merit.
The husband also contends that the trial court erred in ordering him to pay for a new roof for the marital residence because, he says, there is no factual basis for the trial court’s finding that the husband spent insurance proceeds that were intended to repair the roof on “other things.” The husband testified that he had used the insurance proceeds to repair the roof after one hurricane but that the roof had been damaged again in a subsequent storm. The wife testified that the roof on the marital residence was damaged during a hurricane, that the husband received a check from an insurance company to repair the roof, but that the roof was never repaired.
As mentioned, in ore tenus proceedings, the trial court has the advantage of seeing and hearing the witnesses and assessing their demeanor and is in the best position to decide among conflicting testimony which testimony is to be believed. Horton, 17 So.3d at 240; Woods v. Woods, 653 So.2d 312, 314 (Ala.Civ.App.1994). From the judgment, it is apparent that the trial court rejected the husband’s testimony and believed the testimony of the wife. Our deferential standard of review compels us to affirm the trial court’s judgment on this issue because it is not “ ‘ “clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” ’ ” Kellis v. Estate of Sehnatz, 983 So.2d 408, 412 (Ala.Civ.App.2007)(quoting Farmers Ins. Co. v. Price-Williams Assocs., Inc., 873 So.2d 252, 254 (Ala.Civ.App.2003), quoting in turn City of Prattville v. Post, 831 So.2d 622, 627 (Ala.Civ.App.2002)).
The husband next argues that the trial court abused its discretion by ordering him to pay the wife’s attorney. However, as to this issue, the husband first claims that it is unclear whether the final judgment “actually requires the husband to pay the wife’s attorney fees.” In support of this assertion, the husband notes that section 7 of the judgment requires each party to be responsible for his or her debts. The husband also points out that section 15 of the judgment explicitly provides that the husband “shall be responsible for all attorney fees” but that the section does not specify whether the husband shall pay the wife’s attorney fees. He claims that the provision ordering him to pay “all attorney fees” is vague and ambiguous. The second sentence of section 15 states that “all court costs are taxed against the [husband].” In reviewing the judgment in its totality, we believe it is clear that the trial court intended for the husband to pay the wife’s attorney fees.
The husband also contends that the evidence indicates that, other than his disability income, he has not earned any money for the last several years while the wife has earned approximately $60,000 annually since 2008. Therefore, he says, the trial court abused its discretion in ordering him to pay the wife’s attorney fees.
“ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the *246 value of the services performed by the attorney.” . Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is ho evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App.1986).’
“Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).”
Frazier v. Curry, 104 So.3d 220, 228 (Ala.Civ.App.2012).
In this case, the parties had been married 20 consecutive years at the time the wife filed for a divorce. They had been married to each other once before for approximately five years. During the marriage, the wife worked at the husband’s law firm; evidence indicates that she now works as an independent contractor performing title searches. The wife’s tax returns for the 2010 and 2011 tax years indicated that she earned $77,106 and $83,387, respectively.
The husband testified that he has not earned an income since 2008. In addition to having been disbarred from the practice of law, the husband claims that he is disabled as a result of the 2003 accident in which he was “ejected” from his recliner. A physician who testified on behalf of the husband opined that, because of certain psychological issues, the husband could not hold a job. Despite the husband’s alleged disability, in 2006, he was able to campaign for a circuit judgeship. He was elected to the circuit court and served in that capacity until he was removed from the bench. The husband also testified to having been involved in boat racing. He said that he had owned four boats, on which he had spent “a good 200, 300,000 worth of money,” until 2007. He testified at the 2009 hearing that he was unaware that his “last boat” had been sold until the hearing. Furthermore, among the personal items the husband requested were his welding machine, tools, motors, “shop stuff,” and the like. Based on this evidence, the trial court could have determined that the husband was able to engage in physical activities such as boat racing and shop work ’ and, therefore, that he was not so physically disabled that he could not hold a job.
In addition, as mentioned, the evidence could reasonably support a finding that the husband had hidden approximately $1 million in assets from the wife. The evidence is undisputed that, between 2006 and 2008, the husband purchased at least $450,000 in coins to add to his collection. The wife presented evidence indicating that the husband had spent $950,000 on coins during that period. The husband acknowledged that he had emptied bank accounts and investment accounts and had cashed in life-insurance policies to purchase the coins. As noted above, the husband had also spent a substantial amount of money on boat racing. The trial court could have determined that the husband converted the parties’ financial assets into coins, then hid the coins. As mentioned, the trial court expressly found that it did not believe the husband’s testimony that he did not have access to the coins. Furthermore, the trial court noted in the judgment that, during the course of the litigation,
“the [husband] has been in violation of numerous discovery orders and has been in constant contempt throughout this divorce proceeding; has refused to engage in any discovery whatsoever claiming he did not have access to records or that the [wife] had them[,] and other action showing his utter contempt for these proceedings^] which this court finds unacceptable and will deal with accordingly.”
*247 Considering the length of the parties’ marriage, the husband’s conduct in hiding assets and in litigating this matter, and the husband’s apparent financial ability to pay the wife’s attorney fees, we cannot say that the trial court abused its discretion in ordering the husband to pay at least a portion of the wife’s attorney fees. However, we agree with the husband that the trial court erred in not setting a specified sum as the amount the husband had to pay toward those attorney fees. This court has held that a trial court may not order one party to pay another party’s attorney fees without first receiving evidence of the amount of those fees and then determining the reasonableness of that amount. A.B. v. J.B., 40 So.3d 723, 735 (Ala.Civ.App.2009). There is no evidence in the record indicating that the trial court considered the amount or reasonableness of the wife’s attorney fees before ordering that the husband be responsible for paying those fees. Accordingly, that portion of the judgment ordering the husband to pay “all attorney fees” is reversed. On remand, the trial court is directed to take evidence on the amount of fees, to consider the reasonableness of those fees, and to establish a specific sum that the husband must pay toward the wife’s attorney fees.
The husband also contends that the trial court erred in modifying “ex post facto” a July 9, 2008, order allowing members of the husband’s family to pay court-ordered pendente lite support payments on behalf of the husband. That order stated that each payment made on behalf of the husband
“will be a lien against all marital assets on [sic] separately or jointly, by the parties to this cause and the total amount so paid by the [husband’s] family will be refunded to them at an annual percentage rate of 6% at such time as a full and final settlement of this matter is made by and between the parties.”
The wife’s request to modify the July 9, 2008, order so as to require the repayments to be made solely from the husband’s share of the assets was denied by a previous trial judge. The husband states that, in reliance on the order that would allow him to be repaid from the marital assets, his father, Melton, paid the wife $24,000 in pendente lite support that the husband had been ordered to pay. In the final judgment, the trial court ordered the husband to be solely responsible for the repayment of the debt owed to his family and released the wife from any obligation she may have had to reimburse the husband’s family.
The husband cites no relevant authority in support of his contention that the trial court erred in making him solely responsible for reimbursing Melton for the penden-te lite support payments Melton made to the wife on the husband’s behalf.
Aabama’s appellate courts have repeatedly cautioned that
“‘Rule 28(a)(10), Aa. R.App. P„ requires that arguments in an appellant’s brief contain “citations to the cases, statutes, other authorities, and parts of the record relied on.” Further, “it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.” State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Aa.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because “‘it is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” Butler *248 v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).’”
Prattville Mem’l Chapel v. Parker, 10 So.Bd 546, 560 (Ala.2008) (quoting Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007)). Because the husband has failed to include any citation to relevant authority, he has waived this issue.
Furthermore, when a trial court fashions a property division following the presentation of ore tenus evidence, its judgment based on that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Id. A judgment requiring the wife to repay Melton for payments he made on behalf of the husband for amounts the court had ordered the husband to pay the wife would be inequitable. We conclude the trial court did not abuse its discretion in ordering the husband to be solely responsible for reimbursing Melton.
Finally, the husband argues that the judgment must be reversed because, he says, it is not “the result of sufficient judicial consideration.” The husband says that the language in the judgment referring to “agreements” between the parties and to a “mutual release” when no such agreements or mutual release exists indicates that the trial court “did not draft an order after deliberate consideration of the evidence presented to him nor did his order follow the requirements set out in Alabama statutes, court rules, and judicial mandates for court decrees.”
Although the judgment does include language that is superfluous or imprecise, a review of the record indicates that the trial court was attentive during the hearings in this matter. As mentioned, the findings that the trial court included in the judgment are supported by the evidence. Moreover, the husband failed to cite any authority to support his contention that the entire judgment is due to be reversed because it contains language that is not relevant to the issues resolved in that judgment. The husband has failed to demonstrate reversible error as to this issue. See Prattville Mem’l Chapel, 10 So.3d at 560.
For the reasons set forth above, we reverse those portions of the judgment ordering the husband to pay child support and the wife’s attorney fees and we remand the cause for the trial court to conduct further proceedings as to those issues. Further, on remand the trial court is instructed to make determinations regarding the ownership of certain property, including guns, farm equipment, and livestock as discussed in this opinion and to include in the judgment a provision disposing of that property in accordance with its findings. The remainder of the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
All the judges concur.

. For those interested in the complete procedural history, see Dubose v. Dubose, 72 So.3d 1210, 1212 (Ala.Civ.App.2011); and Dubose v. Dubose, 132 So.3d 17 (Ala.Civ.App.2013). In addition to the two previous appeals, the husband has submitted two petitions for a writ of mandamus in this case. Both petitions were denied. See Ex parte Dubose, 58 So.3d 863 (Ala.Civ.App.2009) (table); Ex parte Dubose (No. 2130384, March 19, 2014), — So.3d -(Ala.Civ.App.2014) (table).

. In addition to the record created at the most recent hearing on the issue of the grounds for the parties' divorce, the record in this appeal incorporates the records submitted in the two previous appeals in this case.

. The husband testified that the 2006 campaign was "just real, real bad,” adding that "it festered and festered and festered and boiled over into bar proceedings. It was just a lot of bad, bad, politics.”

. The husband was convicted of making a false statement in connection with the acquisition of a firearm and for possessing a firearm while subject to a protective order. United States v. DuBose, 598 F.3d 726, 728 (11th Cir.2010). The convictions were affirmed by the United States Court of Appeals for the Eleventh Circuit. Id. at 734.

.In his brief on appeal, the husband references testimony regarding a $1.19 million judgment recorded against him. We take judicial notice that our supreme court vacated that judgment and dismissed the case in *237 2011 — before a final judgment was entered in this case — on the ground that the circuit court lacked subject-matter jurisdiction. DuBose v. Weaver, 68 So.3d 814 (Ala.2011).

. This court notes that the United States stock market suffered tremendous losses in the fall of 2008.