THOMPSON, Presiding Judge.
Saleta Gay McDaniel (“the wife”) and Steven Ray McDaniel were married in 1998; no children were born of the parties’ marriage. On March 11, 2013, the wife filed a complaint in the Cherokee Circuit Court (“the trial court”) seeking a divorce; in her complaint, the wife alleged, among other things, that the husband had committed adultery. The wife sought an equitable division of the parties’ marital prop: erty and an award of periodic alimony.
On March 12, 2013, the trial court entered an order restraining the parties from harassing each other and enjoining them from disposing of marital property. On April 5, 2013, after receiving ore tenus evidence, the trial court entered an order setting forth the manner in which the parties were to divide expenses pertaining to the marital home during the pendency of the action and to divide the payment toward the indebtedness incurred during the marriage. Each party later filed motions seeking to have the other held in contempt.
The trial court conducted an ore tenus hearing. On December 27, 2013, the trial court entered a judgment divorcing the parties. In its divorce judgment, the trial court fashioned a property division, denied the wife’s request for an award of periodic alimony, and denied all other requested relief. It its judgment, the trial court found, among other things, that the wife’s testimony had not been credible and that her actions during the pendency of the divorce action had “constitute[d] a significant fraud.” The wife filed a post-judgment motion, and the trial court denied that motion. The wife timely appealed.
The wife argues that the trial court erred in its division of the marital property and by failing to award, or to reserve ruling on the issue of, alimony. With regard to reviewing a trial court’s determinations as to property division and alimony, this court has stated:
“ ‘When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038.’
“Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
“ ‘The issues of property division and alimony are interrelated, and they must be considered together. Albertson v. Albertson, 678 So.2d 118 (Ala. Civ.App.l99[5]). A property division is not required to be equal, but it must be equitable. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, [795 *40 So.2d 729 (Ala.Civ.App.2001) ]; Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage.... Ex parte Drummond, 785 So.2d 358 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ. App.1998); Lutz v. Lutz, supra.’
“Pate v. Pate, 849 So.2d 972, 976 (Ala. Civ.App.2002).”
Spuhl v. Spuhl, 120 So.3d 1071, 1075 (Ala.Civ.App.2013).
The evidence in the record indicates that the parties were married for 15 years. The wife is disabled as a result of an on-the-job accident. In January 2006, the wife received a workers’ compensation settlement of approximately $120,000, and she stated that she invested that money in the construction of the marital home. It is undisputed that the wife is totally disabled; she receives $1,079 per month in Social Security disability benefits. The wife testified that her medications cost $179 each month.
The parties presented evidence indicating that, in 2006, the then newly constructed marital home was valued at approximately $320,000. The husband testified that the marital home was valued at $240,000 at the time of the final hearing and that it was subject to a $220,000 mortgage. The parties obtained government-assisted refinancing of the indebtedness on the marital home during the pendency of the divorce action. The parties were attempting to sell the marital home at the time of the divorce hearing, and the husband testified that the asking price for the home was $240,000.
The husband worked as a plumber during the parties’ marriage. Three years before the divorce hearing, the husband started his own plumbing business. The husband was vague in answering questions about his income, insisting that he did not know how much money he earned and stating that business was down because of a bad economy and that his monthly income fluctuated. The husband insisted that he reported 99% of his income to the Internal Revenue Service, and he disputed the wife’s allegations that he was often paid in cash and did not report the income on the parties’ federal income-tax returns. On their federal joint income-tax returns, the parties reported $7,089 in income in 2010, $1,233 in income in 2011, and a $79 negative income in 2012.
The husband failed to respond to discovery requests for his banking records, and the wife presented evidence indicating that, in one month in late 2012, the husband had deposits of more than $7,000. The bank records also indicate that, in 2012, the husband deposited $59,000 into a bank account, but he stated that $52,000 was spent on business expenses, not including the depreciation of assets. The husband also admitted that the parties’ monthly mortgage payment was $1,700, or $20,400 annually; he stated that he did not know how the parties paid their mortgage given the amount of income he claimed at the time of the hearing.
The parties agreed that, four years before their separation, the husband had an affair with Wendy Woodall but that the parties had reconciled. The husband stated that, after that affair, the parties were “more like roommates.” In February 2013, Woodall contacted the husband, and the husband admitted that they began “speaking” at that time. The husband stated that he informed the wife that he wanted a divorce in late February 2013. The parties separated on March 7, 2013. It is undisputed that the husband moved into a home with Woodall immediately following the parties’ separation. The wife alleged adultery in seeking the divorce, *41 arguing that the husband’s relationship with Woodall caused the breakdown of the marriage. However, the husband testified that “I didn’t do nothing until I had the [divorce] papers filled out.” In its divorce judgment, the trial court cited incompatibility as the ground for the divorce.
Much of the testimony in the record on appeal concerns the parties’ personal property. Aside from their testimony pertaining to the husband’s efforts to retrieve certain property and the wife’s allegations that the husband had entered the marital home when she was not present, the primary dispute between the parties was the location of a number of guns and other hunting equipment the husband or the parties owned. The husband presented evidence indicating that a large gun safe was located in the marital home and that a nearby closet held ammunition, hunting clothing, and other hunting gear. The husband testified that he kept approximately 60 “long guns” in the gun safe, plus 2 weapons stored for the wife’s brother. The husband stated that some of the guns were gifts he had received from family members and that others he had purchased. The husband presented evidence, including the testimony of some of his friends, indicating that a large number of guns were in the gun safe at the time of the parties’ separation and that they were all missing at the time he inspected the safe shortly before the final hearing. The husband claimed that the list of the gun-safe inventory was kept in the gun safe itself and that that inventory was also missing. The husband submitted into evidence a list of the contents of the gun safe and the nearby closet that he claimed were missing (hereinafter referred to as “the hunting equipment”). That exhibit included a valuation for each of the guns, the ammunition, and other hunting items, although the husband did not testify regarding how he reached those valuations. The only testimony concerning the valuation of any asset on that inventory exhibit was the husband’s testimony that he had included on the list the price he had paid in 2002 for a new personal-recreation vehicle that he claimed was also missing; the wife testified that that vehicle was located on the parties’ property. On his exhibit listing the hunting equipment, the husband represented the total value of the items listed on the exhibit, excluding the personal-recreation vehicle, as $55,057.
The wife testified that she had not removed the contents of the gun safe or closet and that she had not disposed of the hunting equipment. The wife denied that she knew the combination for the gun safe, and she stated that she believed that either the husband had entered the marital home without her knowledge and had retrieved the hunting equipment or that the hunting equipment had been stolen. The wife testified that she had not been asked to assist the husband in reporting the hunting equipment stolen to the insurance company but that she would do so.
In its divorce judgment, the trial court divorced the parties on the ground of incompatibility, ordered that the wife receive 33% of the proceeds of the sale of the marital home after the satisfaction of the mortgage and any other indebtedness, and ordered that the husband receive the remaining 67% of any profit from the sale of the marital home. The judgment specified that if the marital home was not sold for an amount sufficient to repay the mortgage indebtedness, the wife was to pay 67% of any remaining debt or expenses and the husband was to pay 33% of the debt or expenses. The judgment awarded the parties their respective vehicles and certain personal property, awarded the husband the entire interest in his plumbing business, and denied the wife’s request for an award of periodic alimony. In its *42 judgment and in its postjudgment order, the trial court made extensive factual findings in which it stated that it did not find the wife’s testimony to be credible, that the wife had disposed of or hid the hunting equipment, and that, in doing so, the wife’s actions constituted a “significant fraud which the Court weighs heavily against her” in reaching its property division. In addition, the trial court denied the wife’s request that the husband be required to repay the six months of pendente lite expenses he had failed to pay. The trial court ordered the wife to be responsible for the repayment of a store credit card with a $200 balance and ordered the parties to be jointly responsible for the repayment of two other credit cards, each of which had a balance of approximately $8,000.
Although the wife purports to raise five separate issues on appeal, four of her arguments pertain to the trial court’s property division and its denial of her request for an award of alimony. Because issues of property division and alimony are interrelated and, therefore, must be considered together, see Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993), we address those arguments together.
When a trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, supra; and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; the source, value, and type of marital property; and the conduct of the parties in relation to the breakdown of the marriage. Robinson v. Robinson, 795 So.2d 729, 734 (Ala.Civ.App.2001). A division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court. Golden v. Golden, 681 So.2d 605, 608 (Ala.Civ.App. 1996).
The wife argues that the trial court erred in failing to consider her contribution of $120,000 from her workers’ compensation settlement to the construction of the marital home. However, the record indicates that the marital home had declined in value significantly between the 2006 date of its construction, when it had been valued at $320,000, and the 2013 divorce hearing, when the parties were attempting to sell the home for $240,000. The husband testified that the mortgage indebtedness on the marital home was approximately $220,000, which meant that the parties hád only approximately $20,000 in equity in the marital home at the time of the entry of the divorce judgment.
The wife also argues that the trial court erred in failing to award her periodic alimony, or by failing to reserve an award of periodic alimony. The wife points out the inconsistencies in the husband’s claims regarding his income and the manner in which the parties lived during the marriage. We agree with the wife that the evidence supports a conclusion that the husband was less than truthful in his testimony regarding his income and that the evidence would support a conclusion that *43 his conduct caused the breakdown of the marriage.
However, in its divorce judgment, the trial court stressed its findings that the wife had been untruthful and had hidden marital assets, i.e., the hunting equipment. The trial court determined that its findings with regard to the wife’s conduct during the pendency of the divorce action would “weigh heavily” in its determination of a property division and alimony award. The wife is correct that there is evidence indicating that she believed others had entered the marital home in her absence and that she had not known the combination for the gun safe. However, the trial court found that the wife had had sole control and possession of the marital home and that there had been an opportunity for her to gain access to a key to the gun safe shortly before the parties’ separation. The trial court’s resolution of factual disputes after receiving ore tenus evidence is entitled to a presumption of correctness on appeal. Roberts v. Roberts, 802 So.2d at 235. We are unable to hold that the trial court’s resolution of the factual issue concerning the contents of the safe was plainly or palpably wrong.
The wife contends that the trial court should not have considered that evidence in fashioning its property division because our caselaw provides that conduct leading to the breakdown of the marriage should be considered in fashioning a property division and her alleged conduct occurred after the parties separated. See Robinson v. Robinson, supra (conduct leading to the breakdown of the marriage is a factor for the trial court to consider in fashioning a property division and alimony award); see also Ex parte Drummond, 785 So.2d 358 (Ala.2000) (same); and Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App. 1998) (same). However, in this case, the trial court found that the wife had committed fraud by either hiding assets or disposing of them and then testifying untruthfully during the divorce hearing. The trial court has the authority to enter an order adjusting for the fraud committed by a party. Dubose v. Dubose, 172 So.3d 233 (Ala.Civ.App.2014); Baggett v. Baggett, 870 So.2d 735 (Ala.Civ.App.2003).
In Baggett v. Baggett, supra, the husband in that case claimed he could not meet his obligations under the divorce judgment because he no longer had any assets; those assets had been transferred to the parties’ son. The trial court found that the husband in the case had committed fraud in transferring the assets to the parties’ son, and, in its judgment, it ordered the husband to meet certain financial obligations and that the transfers to the son be nullified. In response to a postjudgment motion, the trial court agreed that it could not nullify the transfers because the son and the corporation to which the son had transferred the assets were not parties to the divorce action, but the trial court did not amend the requirement that the husband meet the financial obligations that would necessarily require that those assets be transferred back to the husband. The trial court stated that the husband could file an independent action against the son for the return of those assets, if necessary. The husband appealed, arguing that he had not committed fraud and that his alimony obligation should have been terminated. This court affirmed, concluding that the issue whether a fraud had occurred was a question for the trial court to resolve and holding “that the evidence was sufficient to support the trial court’s finding that the husband defrauded the wife by transferring assets to [the son]. Consequently, we find no error in the trial court’s declining to terminate *44 the husband’s alimony obligation.” Baggett v. Baggett, 870 So.2d at 740.
In Dubose v. Dubose, supra, the wife in that case accused her husband of hiding a valuable coin collection in an attempt to make the value of that collection unavailable for division in the divorce action. The trial court found that the husband had’ hidden more than $1 million in coins, and it took the value of those hidden assets into account in fashioning its property division. This court affirmed, concluding that the trial court had not abused its discretion in awarding “the wife more assets than it did the husband in an attempt to offset the money the husband had invested in the [hidden] coin collection.” Dubose v. Dubose, 172 So.3d at 242.
In this case, the trial court did not make a finding regarding the value of the hunting equipment, but the exhibit submitted by the husband indicated that the husband valued those items at approximately $55,000. The only other significant marital asset to which the parties assigned a value at the divorce hearing was the marital home, which had equity of approximately $20,000. The trial court awarded the husband a greater portion of the equity in the marital home and denied the wife’s request for alimony in response to its determination that the wife had fraudulently hidden or disposed of the hunting equipment. The wife argues that that ruling was inequitable and that, in the event the marital home does not sell for an amount that allows the parties to fully repay the mortgage indebtedness, she is unable to meet the obligation of repaying any remaining indebtedness. However, the trial court specifically found that the wife’s conduct in hiding assets was taken into account in its property division and its denial of her request for alimony. We cannot say that the trial court’s judgment attempting to offset in its property division the value of the assets it determined the wife had hidden in order to defraud the husband constituted an abuse of discretion. See Dubose v. Dubose, supra; see also Ryland v. Ryland, 12 So.3d 1223, 1235 (Ala.Civ.App.2009) (the trial court did not abuse its discretion in requiring the husband to mortgage properties to the wife until he complied with certain provisions of the divorce judgment when the evidence supported a conclusion that the husband had attempted to hide marital property). Given the evidence in the record on appeal, we affirm the trial court’s property division and its denial of periodic alimony.
The wife also argues that the trial court erred in failing to find the husband in contempt for his failure to comply with the April 5, 2013, pendente lite support order and in failing to enter a judgment in her favor for past-due amounts. In response to a motion by the wife, the trial court entered the April 5, 2013, pendente lite order requiring the husband to make certain payments to assist the wife in paying household expenses for the marital home. The husband did not dispute that he stopped paying amounts ordered under the April 5, 2013, pendente lite order after July 2013. The wife submitted into evidence an exhibit detailing the amounts the husband should have contributed under that order.
A finding of contempt is within the discretion of the trial court. Miller v. Miller, 47 So.3d 262, 264 (Ala.Civ.App.2009). The husband stated that he had stopped making the pendente lite payments after the wife allegedly burned some of his possessions. We note that the wife testified that she had burned those items and garbage left in a shed after the husband had retrieved his belongings from the shed; the wife explained that the marital home was listed for sale and she was attempting to clean the shed. Although this court might *45 have reached a different conclusion, we decline to hold the trial court in error for failing to hold the husband in contempt.
However, we agree with the wife that the trial court erred in failing to award the wife a judgment for past-due payments under the April 5, 2013, penden-te lite order. Past-due support payments create a final judgment on the date they are due. Myriek v. Myrick, 714 So.2d 311, 315 (Ala.Civ.App.1998); McClelland v. McClelland, 841 So.2d 1264, 1270 (Ala.Civ. App.2002); and Slater v. Slater, 587 So.2d 376, 380 (Ala.Civ.App.1991). Accordingly, we reverse that part of the trial court’s judgment denying the wife’s claim for enforcement of the April 5, 2013, pendente lite order, and we remand the cause for the calculation of the amount past due under that order.
The wife’s request for an attorney fee on appeal is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.